# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### Jackson Division

| | |
|---|---|
| JACKSON WOMEN'S HEALTH ORGANIZATION, on behalf of itself and its patients, )<br><br>and )<br><br>WILLIE PARKER, M.D., M.P.H., M.Sc., on behalf of himself and his patients, )<br><br>    Plaintiffs, )<br><br>v. )<br><br>MARY CURRIER, M.D., M.P.H. in her official capacity as State Health Officer of the Mississippi Department of Health, )<br><br>and )<br><br>ROBERT SHULER SMITH, in his official capacity as District Attorney for Hinds County, Mississippi, )<br><br>    Defendants. ) | SOUTHERN DISTRICT OF MISSISSIPPI<br>F I L E D<br>JUN 27 2012<br>J. T. NOBLIN, CLERK<br>BY _____ DEPUTY<br><br><br>CIVIL ACTION # 3:12CV436DPJ-FKB |

## COMPLAINT

Plaintiffs Jackson Women's Health Organization (the "Clinic") and Willie Parker, M.D., M.P.H., M.Sc. (collectively "Plaintiffs"), by and through their undersigned attorneys, bring this Complaint against the above-named Defendants, their employees, agents, and successors in office ("Defendants") and in support thereof state the following:

## I.     Preliminary Statement

1.  This is a challenge, pursuant to the Constitution of the United States of America and 42 U.S.C. § 1983, to Mississippi House Bill 1390 ("the Act"),[1] which will effectively ban abortion in the State of Mississippi by imposing medically unjustified requirements on physicians who provide abortions.   One of these requirements—mandating that any physician who provides abortions at a licensed clinic must be a board certified or eligible obstetrician/ gynecologist—is even farther removed from medical necessity than a comparable requirement that was enjoined by this Court in 1996 because it imposed an undue burden.   The other requirement, which provides that any physician who provides abortions at a licensed clinic must have "admitting privileges and staff privileges to replace local hospital on-staff physicians" was clearly enacted with the unconstitutional purpose "to cause fewer abortions."  Ex. B, M.J. Lee, *Bill Dooms Only Miss. Abortion Clinic,* Politico, April 5, 2012.

2.  In addition, this litigation challenges the Mississippi Department of Health's decision, reflected in its June 25, 2012 letter, to refuse to issue a renewal license to the Clinic without proof of compliance with the Act and to enforce the Act as soon as it takes effect on July 1, 2012, creating a *de facto* ban on pre-viability abortions in the state.  This decision is a reversal of the Department's previous decision, reflected in its May 29, 2012 letter, to follow its ordinary rulemaking process, which would have delayed enforcement of the Act until approximately mid-August, 2012.   Over the days and weeks leading up to the Department's decision, elected officials subjected the Department to extraordinary political pressure to use the Act to force Plaintiffs to stop providing abortions as quickly as possible.  *See* Ex. C, Letter from Rep. Sam C. Mims to Defendant Dr. Mary Currier (June 20, 2012).

---

[1] A copy of the Act is attached hereto as Exhibit A.

3. Despite Plaintiffs' diligent efforts since the Act was passed, it is impossible for them to comply with the new admitting privileges requirement by July 1, 2012. Upon information and belief, the Clinic is the only abortion provider in Mississippi. Thus, absent relief from this Court, Plaintiffs will be forced to stop providing abortion care to women in Mississippi as of July 1, 2012, leaving those women with nowhere else to turn.

4. For these reasons, the Act will endanger the health of women in Mississippi and violate their constitutional rights.

5. Plaintiffs seek injunctive and declaratory relief to prevent these and other irreparable harms to themselves and their patients. Plaintiffs have no adequate remedy at law.

**II.     Jurisdiction and Venue**

6. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

7. Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this district.

**III.    Parties**

**A.      Plaintiffs**

9. The Clinic is a health care facility in Jackson, Mississippi that has been providing abortion care and other reproductive health care to women since 1996. It has been the sole abortion provider in the State of Mississippi since 2002. The Clinic has been continuously licensed by the Department of Health since licensure was required. The Clinic sues on its own behalf and on behalf of its patients.

10. Plaintiff Willie Parker, M.D., M.P.H., M.Sc. is a board-certified obstetrician-gynecologist licensed to practice medicine in Mississippi, Alabama, the District of Columbia, Maryland, Pennsylvania, and Virginia.   Dr. Parker graduated with an M.D. from the University of Iowa College of Medicine and completed his residency in obstetrics and gynecology ("OB/GYN") at The University of Cincinnati College of Medicine.  He also holds a Master's of Public Health from the Harvard School of Public Health.  Dr. Parker provided general ob-gyn care to his patients for nearly 20 years, including delivering babies.   He has been providing abortion care since 2002.  Dr. Parker sues on his own behalf and on behalf of his patients.

**B.    Defendants**

11. Defendant Mary Currier, M.D., M.P.H., is the State Health Officer of the Mississippi Department of Health.  Among other things, she is responsible for supervising and directing all activities of the Department of Health, pursuant to Miss. Code Ann. §§ 41-3-5.1, 41-3-15(1)(c). She is sued in her official capacity.

12. Defendant Robert Shuler Smith is the District Attorney for Hinds County, in which the Clinic is located.  Defendant Smith has enforcement authority for any intentional violation of the licensing scheme for abortion facilities, pursuant to Miss. Code Ann. § 41-75-26(2).  He is sued in his official capacity.

**IV.    Factual Allegations**

**A.    The Challenged Requirements**

13. On April 16, 2012, Governor Phil Bryant signed Mississippi House Bill 1390 into law. The Act's effective date is July 1, 2012.

4

14. The Act amends Miss. Code Ann. § 41-75-1, which defines certain terms for purposes of Mississippi's statutory scheme regulating ambulatory surgical facilities.  Two amendments are at issue in this litigation.

15. First, the Act amends the definition of "abortion facility" to state that all physicians "associated with an abortion facility must be board certified or eligible in obstetrics and gynecology" (the "OB/GYN Requirement").   H.B. 1390 § 1, *to be codified at* Miss. Code Ann. § 41-75-1(f).

16. Second, the Act amends the definition of "abortion facility" to state that all physicians "associated with the abortion facility must have admitting privileges at a local hospital and staff privileges to replace local hospital on-staff physicians" (the "Admitting Privileges Requirement"). *Id.*

17. Numerous elected officials have made statements indicating that the purpose of the Act is to end abortion in Mississippi.

18. For example, in an official statement issued shortly after the Mississippi Legislature passed the Act, Lieutenant Governor Tate Reeves declared that HB 1390 "should effectively close the only abortion clinic in Mississippi." *See* Ex. D, Joe Sutton and Tom Watkins, *Mississippi Legislature Tightens Restrictions on Abortion Providers*, CNN Politics (Apr. 4 2012).

19. Similarly, Governor Bryant vowed to sign the bill, saying, "I will continue to work to make Mississippi abortion-free."   *See* Ex. E, Phil West, *Mississippi Senate Passes Abortion Regulation Bill,* The Commercial Appeal, April 4, 2012.

20. As of the filing of this Complaint, Lt. Gov. Reeves still has the following statement posted on his website: "[T]he Legislature took steps to end abortion in Mississippi by requiring

doctors performing abortion to have admitting privileges at a local hospital. This measure not only protects the health of the mother but should close the only abortion clinic in Mississippi." Ex. F, Statement from Lt. Gov. Reeves' Website, http://ltgovreeves.ms.gov/Pages/About.aspx (last visited June 26, 2012).

21. Likewise, State Senator Merle Flowers reportedly stated, "There's only one abortion clinic in Mississippi. I hope this measure shuts that down." *See* Ex. E.

22. State Representative Bubba Carpenter was videotaped saying, "We have literally stopped abortion in the state of Mississippi. . . . Three blocks from the Capitol sits the only abortion clinic in the state of Mississippi. [The Act] says, if you would perform an abortion in the state of Mississippi, you must be a certified OB/GYN and you must have admitting privileges to a hospital. Anybody here in the medical field knows how hard it is to get admitting privileges to a hospital." *See* Alcorn County G.O.P., Rep. Bubba Carpenter:  We Have Literally Stopped Abortion in the State of Mississippi, YouTube, http://www.youtube.com/watch ?v=N3LOm2iXa4U&noredirect=1 (last visited June 26, 2012).

**B.    The OB/GYN Requirement**

23. The Act is not the first attempt by the State of Mississippi to require physicians who provide abortions to have specialized, and medically unnecessary, training in OB/GYN.

24. On October 9, 1996, the United States District Court for the Southern District of Mississippi preliminarily enjoined then-new regulations that required any physician providing abortions to have completed a residency in OB/GYN. *Pro-Choice Mississippi v. Thompson*, CV No. 3:96CV596BN (Oct. 9, 1996).

25. The Court held that "the state cannot meet its burden . . . [to show] that there is a reasonable medical necessity directed to preserve the woman's health in requiring ob-gyn

6

residency training for all physicians performing abortions." *Id.*, Tr. of Hr'g and Bench Op. at 18 ln.14-19 (Sept. 28, 1996).

26. Board certification or eligibility in OB/GYN is not necessary for the safe provision of abortion care.

27. Medical evidence has shown that physicians with specialties other than OB/GYN, and in particular family medicine, can safely provide abortion care.

28. The Clinic has hired family medicine physicians to provide abortion care in the past, and would do so again. Hiring appropriately trained and qualified physicians, regardless of their specialty, is an important way to provide women with access to abortion care.

29. Enforcing the OB/GYN Requirement would prevent the Clinic from hiring additional physicians to provide abortion care to patients. This would restrict access to care with no showing of "a reasonable medical necessity directed to preserve the woman's health." *Id.*

**C.      Impact of the Admitting Privileges Requirement**

30. Because the Clinic provides abortion care up to 16 weeks of pregnancy, as calculated from the first day of a woman's last menstrual period ("lmp"), it is required to be licensed as a "Level I abortion facility." *See* Miss. Admin. Code 15-16-1:44.2. Level I abortion facilities must comply with the regulations applicable to abortion facilities and also with the regulations applicable to ambulatory surgical facilities. *See* Miss. Code Ann. § 41-75-1.

31. The Department frequently conducts rigorous inspections of the Clinic to assess its compliance with all applicable regulations.

32. The Department's most recent inspection of the Clinic was conducted on June 18, 2012; the previous inspection was on April 12, 2012. Both inspections found the Clinic to be in compliance with applicable regulations.

33. In compliance with Miss. Admin. Code 15-16-1:44.12, the Clinic has a written transfer agreement with a local hospital.

34. In compliance with Miss. Admin. Code 15-16-1:42.9, one of the physicians on the Clinic's medical staff has admitting privileges in a local hospital.

35. Abortion care before 16 weeks lmp is extremely safe and significantly safer than carrying a pregnancy to term.

36. Complications of any kind following an abortion are rare. The overall complication rate for abortion care nationwide is less than 1%. The nationwide rate for complications requiring hospitalization following an abortion is less than .3% (less than 3 out of 1000).

37. In the vast majority of cases, the types of complications that may occur following an abortion can be safely and appropriately managed in an outpatient setting.

38. Admitting privileges are not necessary to provide appropriate care in the unlikely event of a serious complication following an abortion.

39. In the unlikely event that a patient experienced a serious complication that required hospitalization while at the Clinic, the Clinic would transfer her by ambulance to the nearest hospital.

40. The customary practice is for a facility that accepts a patient in emergency situations to remain in contact with the physician who made the decision to transfer the patient, whether or not that physician has privileges at the facility.

41. The Clinic has an impeccable safety record.

42. Since the current owner took over in 2010, the Clinic has had no major incidents, nor has a single patient required admittance to the emergency room after receiving an abortion at the Clinic.

43. The Clinic has an established hospital transfer agreement to transfer a patient to the hospital, and a physician on staff with admitting privileges at a local hospital, but it has never been necessary to use those arrangements.

44. Many of the Clinic's patients travel substantial distances to receive abortion care at the Clinic.

45. In the unlikely event that a patient experienced a serious complication after leaving the Clinic, the appropriate course of action would be for her to go to the nearest emergency room. For many of the Clinic's patients, the nearest emergency room would not be in Jackson, where the Clinic is located, and might not even be in the State.

46. Thus, requiring all of the physicians "associated with" the Clinic to have admitting privileges at a local hospital would not increase patient safety, because the Clinic is already more than adequately prepared to respond to a serious complication or other health emergency.

### D. The Clinic's Efforts to Comply with the Admitting Privileges Requirement Since the Act Was Passed

47. Shortly after the Act was signed into law, the Clinic began the process of applying for privileges on behalf of John Doe, M.D.,[2] who was at that time the only physician providing abortion to women at the Clinic on a regular basis. Dr. Doe did not have privileges at a local hospital. The burdens associated with the application process required the Clinic to hire additional staff and to gather a substantial amount of information.

48. As soon as Dr. Parker joined the Clinic's medical staff on June 18, 2012, the Clinic began to seek privileges for him as well.

49. Despite Plaintiffs' diligent efforts, none of the local hospitals has granted privileges as of the date of this filing.

---

[2] Plaintiffs are using a pseudonym to refer to this physician out of concern for his safety and privacy.

50. For example, one hospital has not even sent an application to the Clinic, despite the Clinic's repeated efforts since early May to obtain one.  The Clinic began attempting to contact University Medical Center in early May, and has made multiple phone calls and, pursuant to instructions from hospital staff, submitted a written request for an application, but no application has been sent.

51. Similarly, another hospital has received, but has not acted, on Dr. Doe's application for privileges.  Hospital staff advised Clinic staff that the application, submitted on or about May 30, 2012, would be considered at a meeting on June 19, 2012.  However, on or about June 19, 2012, when Clinic staff contacted the hospital to ask for an update, the hospital's staff advised that Dr. Doe's application had not been considered at the meeting and that it was unclear when it would be considered.

52. While its efforts to obtain privileges were underway, the Clinic wrote to the Department on May 15, 2012, asking it to suspend enforcement of the Admitting Privileges Requirement for either one year or six months, pursuant to Miss. Code Ann. § 41-75-16, so that the Clinic could complete the process of applying for privileges for its doctors.

53. When it had not received a response to its letter within a week, the Clinic followed up with a phone call to Department staff.

54. By letter dated May 29, 2012, the Department declined to suspend enforcement of the Admitting Privileges Requirement for the period of time requested by the Clinic.  However, the Department indicated that it would be following its normal rule-making process and stated in the letter that it would not be considering amendments to the rules affected by the Act until its meeting on July 11, 2012.  Further, the Department stated that it would review the Clinic's compliance with the Act at the Clinic's "next annual survey," which is expected to occur in

August or September 2012. *See* Ex. G, Letter from Defendant Dr. Mary Currier to Diane Derzis (May 29, 2012).

55. Pursuant to Mississippi's Administrative Procedure Act, an amended rule does not take effect until 30 days after its filing with the Secretary of State, unless certain extraordinary exceptions apply. *See* Miss. Code Ann. § 25-43-3.113.

56. From the May 29 letter and its conversations with Department staff, the Clinic understood that the Department intended to promulgate amended rules according to Miss. Code Ann. § 25-43-3.113(1), which provides for a 30-day period between filing and effective date. Because the Department's letter stated it would be considering amendments to the rules affected by the Act at its July 11, 2012 meeting, the Clinic understood that the new rules enforcing the Admitting Privileges Requirement would not be effective until mid-August 2012.

57. On information and belief, the Department has never required the Clinic to comply with newly-promulgated regulations without the 30-day period between filing and effective date described in Miss. Code Ann. § 25-43-3.113(1).

58. For all of the reasons stated above, the Clinic reasonably believed that the Department would not be requiring compliance with the Admitting Privileges Requirement on July 1, 2012.

59. On June 20, 2012, State Representative Sam C. Mims wrote to Defendant Currier to ask her to enforce the new requirements imposed by the Act by the first business day after the law's effective date.  His letter stated, "I would expect that any abortion facility in Mississippi that is staffed by a physician or physicians without hospital admitting and staff privileges . . . must immediately cease performing abortions until such time as the requirements of House Bill 1390 have been met." Ex. C.

60. On June 22, 2012, the Department advised the Clinic by telephone that it would be enforcing the new requirements imposed by the Act immediately upon its effective date of July 1, 2012.

61. On June 25, 2012, the Clinic received a letter from the Department stating that, in order to continue operating as an abortion provider, the Clinic was required to send proof of compliance with the Act to the Department on or before July 1, 2012. *See* Ex. H, Letter from Vickey Berryman to Diane Derzis (June 25, 2012).

62. The Clinic has not received its renewal license for the period beginning July 1, 2012.

63. The Clinic applied for a renewal license and paid the application fee in May 2012.

64. From the June 25 letter, the Clinic understands that it will not receive its renewal license unless it produces proof on or before July 1, 2012 that its physicians have privileges at a local hospital.

65. On information and belief, the Department has never required the Clinic to produce proof of compliance with a new law prior to the new law's effective date.

66. On information and belief, the Department has never required the Clinic to produce proof of compliance with a new law prior to the new law's effective date as a condition of receiving a renewal license.

67. As of the date of this filing, the Department has not advised the Clinic of the basis for its new decision to immediately implement the Admitting Privileges Requirement without further rulemaking.

68. Immediate implementation is not justified by any imminent peril. Indeed, the Department's initial decision to follow the normal rulemaking procedure indicates that it recognized no immediate peril exists.

69. Plaintiffs continue to make diligent efforts to secure privileges but believe in good faith that, despite those efforts, on July 1, 2012 and for at least a few months thereafter, compliance with the Admitting Privileges Requirement will not be possible.

## V.   Irreparable Harm

70. The Department's decision to immediately enforce the Admitting Privileges Requirement and its refusal to issue the Clinic a renewal license without proof of compliance with the Admitting Privileges Requirement does not serve any legitimate state interest.

71. Rather, the Department's actions jeopardize patient health, because they will effectively ban abortion in the State of Mississippi, leaving women with nowhere to turn in Mississippi.

72. The Clinic expects that at least twenty-five women will seek abortions during the week following July 1, 2012. Although abortion is a very safe procedure, its risks increase with gestational age; therefore, any delay in a woman's ability to obtain abortion would expose her to unnecessary, increased health risks.  Some of the Clinic's patients may be able to travel to other states, but this can cause significant delays.  Women without the means to travel will not have this option, and accordingly may not be able to obtain a safe abortion at all.

73. Thus, the Department's decision to immediately enforce the Admitting Privileges Requirement and its refusal to issue a renewal license without proof of compliance with the Admitting Privileges Requirement impose irreparable harm on Plaintiffs' patients in two ways: threatening the health of women seeking abortions; and depriving women of their constitutionally-protected right to obtain a pre-viability abortion.

74. In addition, the Department's actions will irreparably harm Plaintiffs by depriving them of protected property and liberty interests without due process of law.

75. As a whole, the Act will irreparably harm women in the State of Mississippi because it interferes with women seeking to exercise their constitutional right to a pre-viability abortion.

VI.   **Claims for Relief**

## COUNT ONE
### (Substantive Due Process – Patients' Right to Privacy)

76. The allegations of ¶¶ 1-75 are incorporated by reference as though fully stated herein.

77. The Act as a whole violates the liberty interests of Plaintiffs' patients, as guaranteed by the Fourteenth Amendment to the United States Constitution, because it will effectively ban pre-viability abortion in the state.

78. The Department's decision to immediately enforce the Admitting Privileges Requirement and its refusal to issue a renewal license without proof of compliance with the Admitting Privileges Requirement violate the liberty interests of Plaintiffs' patients, as guaranteed by the Fourteenth Amendment to the United States Constitution, because those actions will effectively ban pre-viability abortion in the state.

79. The OB/GYN Requirement violates the liberty interests of Plaintiffs' patients, as guaranteed by the Fourteenth Amendment to the United States Constitution, because it imposes a substantial obstacle in the path of women seeking pre-viability abortion.

80. The Act as a whole, and the Department's actions, violate the liberty interests of Plaintiffs' patients, as guaranteed by the Fourteenth Amendment to the United States Constitution, because their purpose is to prevent women from obtaining pre-viability abortions.

## COUNT TWO
### (Procedural Due Process)

81. The allegations of ¶¶ 1-80 are incorporated by reference as though fully stated herein.

82. The Clinic has a protected property and/or liberty interest in continuing its ongoing business, which has been operating in the State of Mississippi since 1995, and providing medical care to its patients.

83. Dr. Parker has a protected property and/or liberty interest in continuing to pursue his chosen profession of providing a range of reproductive health services to his patients.

84. The Department's decision to immediately enforce the Admitting Privileges Requirement and its refusal to issue a renewal license without proof of compliance with the Admitting Privileges Requirement deprive Plaintiffs of their protected property and/or liberty interests without any process whatsoever, let alone constitutionally adequate process, in violation of the Fourteenth Amendment to the United States Constitution.

85. Moreover, the Department's May 29, 2012 refusal to delay enforcement for a grace period of six months or a year, as provided by Miss. Code Ann. § 41-75-16, despite Plaintiffs' explanation of their efforts to comply with the Admitting Privileges as quickly as possible, deprived Plaintiffs of a constitutionally adequate opportunity to attempt to comply with the Admitting Privileges Requirement, which in turn deprived them of their protected property interests in violation of the Fourteenth Amendment to the United States Constitution.

## COUNT THREE
### (Substantive Due Process)

86. The allegations of ¶¶ 1-85 are incorporated by reference as though fully stated herein.

87. The Clinic has a protected property and/or liberty interest in continuing its ongoing business, which has been operating in the State of Mississippi since 1995, and providing medical care to its patients.

88. Dr. Parker has a protected property and/or liberty interest in continuing to pursue his chosen profession of providing a range of reproductive health services to his patients.

89. The Department's decision to immediately enforce the Admitting Privileges Requirement and its refusal to issue a renewal license without proof of compliance with the Admitting Privileges Requirement deprive the Clinic of a protected property interest without due process of law, because those actions will prevent the Clinic from continuing to operate under its existing and renewal licenses for no legitimate state interest, in violation of the Fourteenth Amendment to the United States Constitution.

90. The Department's decision to immediately enforce the Admitting Privileges Requirement and its refusal to issue a renewal license without proof of compliance with the Admitting Privileges Requirement deprive Dr. Parker of a protected property interest without due process of law, because those actions will prevent him from continuing to practice his profession for no legitimate state interest, in violation of the Fourteenth Amendment to the United States Constitution.

## VII.    Prayer for Relief

WHEREAS, Plaintiffs respectfully request that this Court:

A.  issue a temporary restraining order and/or injunctive relief barring Defendants, their employees, agents, and successors in office from enforcing the Act;

B.  declare that the OB/GYN Requirement and the Admitting Privileges Requirement are unconstitutional, void, and of no effect;

C.    issue permanent injunctive relief, without bond, restraining Defendants, their employees, agents, and successors in office, from enforcing the Act; and

D.  grant such other relief, including attorney's fees and costs under 42 U.S.C. § 1988, as this Court deems just and proper.

Respectfully submitted, this 27th day of June, 2012,


Robert B. McDuff, MS Bar #2532
Law Office of Robert McDuff
767 North Congress Street
Jackson, MS  39202
(601) 969-0802 Phone
(601) 969-0804 Fax
rbm@mcdufflaw.com

Michelle Movahed*
NY Bar #4552063
IL Bar#6291836
Center for Reproductive Rights
120 Wall Street, 14th Floor
New York, NY 10005
(917) 637-3628 Phone
(917) 637-3666 Fax
mmovahed@reprorights.org

*Pro Hac Vice* Application to be Filed

ATTORNEYS FOR PLAINTIFFS