IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| JACKSON WOMEN'S HEALTH ORGANIZATION, on behalf of itself and its patients, | ) ) ) ) | |
| And | ) ) | |
| WILLIE PARKER, M.D., M.P.H., M.Sc., on behalf of himself and his patients, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:12-CV-00436-DPJ-FKB |
| MARY CURRIER, M.D., M.P.H. in her official capacity as State Health Officer of the Mississippi Department of Health, | ) ) ) ) | |
| and | ) ) | |
| ROBERT SHULER SMITH, in his official capacity as District Attorney for Hinds County, Mississippi, | ) ) ) ) | |
| Defendants. | ) | |

### *AMICUS CURIAE* MEMORANDUM OF GOVERNOR PHIL BRYANT IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Governor Phil Bryant signed House Bill 1390 into law on April 16, 2012, after the Mississippi House of Representatives and Mississippi Senate passed the bill by votes of 80–37 and 45–6, respectively. In connection with signing the bill, Governor Bryant reiterated his opposition to abortion and commitment to an "abortion-free" Mississippi; however, he also made clear that he supported this bill because its requirements will protect patient health and safety. As explained below, House Bill 1390 addresses a valid public health concern by ensuring continuity of care in the event that complications follow an abortion. It does so by extending to

1

abortion clinics the same admitting-privileges requirement that already applies to other out-patient surgery facilities.  This extension was necessary to close a loophole in the state's current admitting-privileges rule that permitted plaintiffs to comply with the letter of the rule without actually ensuring continuity of care.  Given the valid medical reasons for House Bill 1390's admitting-privileges requirement, Governor Bryant's or other individual lawmakers' views on abortion in general—or this bill in particular—cannot render the requirement unconstitutional.

**I.      Governor Bryant Opposes Abortion But Also Supported House Bill 1390 For Public Health Reasons.**

Governor Bryant has long made clear that he is pro-life and opposed to abortion.  He believes that *Roe v. Wade* was wrongly decided and should be overruled because nothing in the Constitution grants a right to end the life of an unborn child.  Governor Bryant has said this for years.  Accordingly, it should be no surprise to anyone that he has vowed to "continue to work to make Mississippi abortion-free."  [Doc. No. 1, at ¶ 19 (quoting Phil West, *Mississippi Senate Passes Abortion Regulation Bill*, THE COMMERCIAL APPEAL, Apr. 4, 2012)].

Contrary to plaintiffs' suggestions, however, that comment lacks legal significance.  To begin with, Governor Bryant has also made clear that he supports *the law at issue in this case* for public health reasons.  Indeed, in the very article that plaintiffs selectively quote, Governor Bryant is first quoted as stating that "*[t]his legislation* is an important step to strengthening abortion regulations and protecting the health and safety of women."  West, *supra* (emphasis added).  The Governor's statement upon signing the bill similarly reiterated his *general* opposition to abortion while at the same time citing the public health reasons for *this law*:

> I believe that all human life is precious, and as governor, I will work to ensure that the lives of the born and unborn are protected in Mississippi.  *This bill* requires all physicians associated with an abortion clinic in Mississippi to be board-certified or eligible in obstetrics and gynecology.  *To further protect patient safety in the event*

2

>*of a complication during the procedure*, this bill also requires the physician to have staff and admitting privileges at a local hospital.[1]

Governor Bryant's statements regarding House Bill 1390, which amends Miss. Code Ann. § 41-75-1, are consistent with the overall purpose of Title 41, Chapter 75 of the Mississippi Code: "The purpose of this chapter is to protect and promote the public welfare by providing for the development, establishment and enforcement of certain standards in the maintenance and operation of ambulatory surgical facilities and abortion facilities which will ensure safe, sanitary, and reasonably adequate care of individuals in such facilities."  Miss. Code Ann. § 41-75-3.

To be sure, when asked about the possibility that plaintiffs might fail to comply with House Bill 1390's safety-related licensure requirements, Governor Bryant commented:  "If it closes that clinic, then so be it."[2]  Put simply, the Governor is not concerned that enforcement of a valid, medically justified licensure requirement may result in the closure of a clinic that does not comply.  But Governor Bryant's lack of sympathy for the abortion clinic is hardly a reason to strike down the requirement.  The nature of the "burden," if any, that House Bill 1390 imposes on the "right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life," which is held to include a right to an abortion, *see Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 851 (1992), is not dependent on the statements of individual lawmakers.  Given House Bill 1390's valid health-related justifications (*see infra*) and overwhelming legislative support, neither Governor Bryant's general opposition to abortion nor other isolated statements of a few individual lawmakers render the law unconstitutional.  *Cf. Mazurek v. Armstrong*, 520 U.S. 968, 973 (1997) ("[T]hat an anti-abortion group drafted the …

---

[1] *Governor Phil Bryant Signs House Bill 1390*, Apr. 16, 2012 (emphasis added), *available at* http://www.governorbryant.com/governor-phil-bryant-signs-house-bill-1390/.

[2] Emily Wagster Pettus, *Miss. May Be Only State Without Abortion Clinic*, AP, June 30, 2012, *available at* http://abcnews.go.com/US/wireStory/miss-state-abortion-clinic-16685749.

law … says nothing significant about the legislature's purpose in passing it."); *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 204 (Stevens, J.) ("[I]f a nondiscriminatory law is supported by valid neutral justifications, those justifications should not be disregarded simply because partisan interests may have provided one motivation for votes of individual legislators."); *see also ACLU v. Praeger*, 815 F. Supp. 2d 1204, 1215 (D. Kan. 2011) ("Where a law can be viewed as having a rational purpose other than simply obstructing the right to abortion, the court cannot presume that an invalid purpose actually motivated the legislature to adopt the law, let alone that the invalid purpose was the legislature's predominant motive.").

II.     **House Bill 1390 Promotes Continuity Of Care In The Event Of Emergency Complications By Extending To Abortion Facilities The Same Admitting-Privileges Requirement That Already Applies To Other Out-Patient Surgical Facilities.**

Title 41, Chapter 75 of the Mississippi Code establishes health and safety standards for "abortion facilities," such as the clinic at issue in this case, and "ambulatory surgical facilities." Miss. Code Ann. § 41-75-3.  An "ambulatory surgical facility" is a healthcare facility the primary purpose of which is "providing elective surgical treatment of 'outpatients' whose recovery, under normal and routine circumstances, will not require 'inpatient' care." *Id.*, § 41-75-1(a).  In other words, it is a surgical facility at which, like an abortion facility, "[t]he patient … arrive[s] … and expect[s] to be discharged on the same day." *Id.*, § 41-75-1(d).

As plaintiffs acknowledge [Doc. No. 6, at p.18], state law *already* requires all physicians associated with "ambulatory surgical facilities" to have admitting privileges at a local hospital. *See* Miss. Admin. Code § 15-16-1:42.9.7 ("Rule 42.9.7").  The primary purpose of an admitting-privileges requirement is to ensure continuity of care, *i.e.*, if there are complications from the out-patient procedure that require hospital admission, the same physician can continue treating the patient following admission to the hospital.

4

House Bill 1390 simply extends the same admitting-privileges requirement to abortion facilities. Whereas Rule 42.9.7, *supra*, had required that "one physician member performing abortion procedures in the facility … have admitting privileges in at least one local hospital," House Bill 1390 now requires that *all* doctors associated with the facility have such privileges. The admitting privileges requirement serves the same purpose in the abortion context that it does in the context of other out-patient procedures, and it was certainly reasonable for the Legislature to conclude that it should apply equally in both contexts. As the Eighth Circuit put it, "[t]he State …, in exercising its police powers to protect the well-being of its citizens, has undoubted authority to regulate the conditions under which surgical procedures are performed. *Such legitimate state regulation of surgical procedures is not rendered unconstitutional because it is specifically applied to abortion*." *Women's Health Ctr. of West County, Inc. v. Webster*, 871 F.2d 1377, 1381 (8th Cir. 1989) (emphasis added) (upholding a law requiring that doctors who perform abortions have admitting privileges where the state imposed similar requirements on all doctors performing out-patient surgeries). Thus, contrary to plaintiffs' arguments [*see* Doc. No. 6, at p.18], the fact that other out-patient surgical facilities are also subject to an admitting-privileges requirement is strong evidence that House Bill 1390 *is* a valid public health regulation.

Moreover, while plaintiffs repeatedly assert that complications following an abortion are "rare" [*see* Doc. No. 1, ¶¶ 36-37], they do not deny that such complications occur and can be serious and even life-threatening. *See Webster*, 871 F.2d at 1381 (crediting expert testimony that abortion involves risks of serious complications and holding that an admitting-privileges requirement "furthers important state health objectives"). The admitting-privileges requirement protects patient safety in the event of such complications, and "[c]onsiderations of marginal safety, including the balance of risks, are within the legislative competence when," as in this

case, "the regulation is rational and in pursuit of legitimate ends." *Gonzalez v. Carhart*, 550 U.S. 124, 166 (2007).

Finally, if the existing—and unchallenged—requirement that "one physician member performing abortion procedures in the facility" (Rule 42.9.7, *supra*) is a valid health regulation, it necessarily follows that House Bill 1390's admitting-privileges requirement is also valid. Experience has shown that the valid goal of ensuring continuity of care cannot be achieved simply by requiring that *some member of the clinic's staff* have admitting privileges. Rather, it is essential that the *treating physician* have admitting privileges. In this case, plaintiffs admit that "the *only* physician providing abortion to women at the Clinic on a regular basis" does "*not* have privileges at a local hospital." [Doc. No. 1, ¶ 47 (emphasis added)]. Moreover, it appears that the only physician associated with the clinic who does have admitting privileges [Doc. No. 1, ¶ 34] does not perform *any* abortions.[3]  House Bill 1390 was thus necessary to address a loophole that existed under prior law that permitted a clinic to satisfy the letter of the rule's admitting-privileges requirement[4] without actually ensuring or even promoting continuity of care.

---

[3] *See, e.g.*, Elizabeth Waibel, *Dr. Carl Reddix Talks About Political Realities*, JACKSON FREE PRESS, May 30, 2012 (Q: "But you don't do abortions yourself, do you?"  A:  "Correct.  So all I'm doing is being a repository such that my colleagues won't have to lessen the number of people who call them and the clinic has someone that's designated that they can call."), *available at* http://www.jacksonfreepress.com/news/2012/may/30/dr-carl-reddix-talks-about-political-realities/.

[4] As a matter of fact, it does not appear that the clinic was or is in compliance with the requirement that "one physician member *performing abortion procedures in the facility* … have admitting privileges in at least one local hospital." Rule 42.9.7 (emphasis added).  As noted above, it seems that the only physician associated with the facility who does have admitting privileges does *not* perform abortions.

6

## **CONCLUSION**

For the reasons discussed above and in the memorandum and supporting declarations filed today by Defendant Mary Currier, House Bill 1390 is a valid public health measure, and plaintiffs' motion for a preliminary injunction should be denied.

July 9, 2012                                                  Respectfully submitted,

                                                              s/Jack L. Wilson
                                                              Jack L. Wilson (MS Bar # 101482)
                                                              Office of the Governor
                                                              Post Office Box 139
                                                              Jackson, MS 39205
                                                              Telephone: (601) 359-3150
                                                              Email: Jack.Wilson@governor.ms.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

    s/Jack L. Wilson
Jack L. Wilson (MS Bar # 101482)
Office of the Governor
Post Office Box 139
Jackson, MS 39205
Telephone: (601) 359-3150
Email: Jack.Wilson@governor.ms.gov