UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JACKSON WOMEN'S HEALTH
ORGANIZATION, ET AL.                                                                          PLAINTIFFS

VS.                                                   CIVIL ACTION NO.: 3:12cv436-DPJ-FKB

MARY CURRIER, M.D., M.P.H, ET AL.                                                 DEFENDANTS

ORDER

      This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction [5]. Having conducted oral argument and having fully considered the parties' submissions, the Court finds that the injunctive relief provided in its previously entered TRO should be modified.  The key issue at this early stage is whether Plaintiffs have demonstrated irreparable harm justifying preliminary injunctive relief pending final resolution of the case.  This Order protects Plaintiffs from the limited irreparable harm they have asserted, but allows Mississippi House Bill 1390 ("the Act") to take effect, at least for now.  The Order requires Plaintiffs to continue to seek admitting privileges—as they said they would—and enjoins Defendants from exposing Plaintiffs to criminal or civil penalties for continued operation—something Defendants have no immediate plans to pursue.  The motion will therefore be granted in part.

I.      Facts and Procedural History

      The Act requires that all physicians associated with abortion clinics have admitting and staff privileges at a local hospital and be board certified in obstetrics and gynecology.  At the time the Act was passed, Jackson Women's Health Organization ("JWHO" or "the Clinic") was the only abortion clinic in the State of Mississippi, and only one of its doctors had such privileges.  That remains the case, and the one doctor with privileges has a regular, private

OB/GYN practice and does not provide the majority of abortions. The two doctors providing the majority of the Clinic's services do not have admitting or staff privileges, though they have sought such privileges since the passage of the Act.

Plaintiffs previously sought a TRO to block the July 1, 2012, effective date of the Act. But before that date arrived, the State took several actions to address Plaintiffs' concerns, to include renewing the Clinic's license and offering assurances that Plaintiffs would not be prosecuted for any violations of the Act at this time. Plaintiffs nevertheless argued that irreparable injury would occur and they were granted a TRO on July 1, 2012. Extensive briefing and oral argument followed. The parties agreed to forego an evidentiary hearing and rely on the affidavits and other record evidence. The Court has personal and subject matter jurisdiction.

II.     Analysis

This case is before the Court on a motion for preliminary injunction. To obtain such relief, the moving party must establish four elements:

> (1) substantial likelihood of success on the merits; (2) substantial threat that plaintiff will suffer irreparable injury; (3) injury outweighs any harm the injunction might cause the defendant; and (4) injunction is in the public interest.

*Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411, 419 n.15 (5th Cir. 2001). The key issue before the Court at this time is the second element—irreparable injury.

The case presents in a somewhat unusual posture. As an initial point, we do not yet know whether the Clinic will be able to comply with the Act. Presently, it does not, but under section 41-75-16 of the Mississippi Code, it must be given "a reasonable time, under the particular circumstances not to exceed six (6) months from the date [newly-enacted licensing requirements] are duly adopted, within which to comply with such rules and regulations and minimum

standards." According to Defendants, the "duly adopted" date is the date the administrative rules promulgated under the Act took effect, which was July 11, 2012. Thus, it is certainly possible that when the Clinic's deadline to comply finally arrives it will be in full compliance. Or, it may not be. This begs the question whether any alleged harm constitutes irreparable injury *at this time*.

The "decision regarding irreparable injury to the plaintiff must not be based on the ultimate issue of the constitutionality of the statute." *Manning v. Hunt*, 119 F.3d 254, 264 (4th Cir. 1997). Even if an act is unconstitutional, it will not be preliminarily enjoined unless the plaintiff proves an irreparable harm. This standard was summarized in *United States v. Emerson*:

> a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. A presently existing actual threat must be shown. However, the injury need not have been inflicted when application is made or be certain to occur; a strong threat of irreparable injury before trial is an adequate basis.

270 F.3d 203, 262 (5th Cir. 2001). In *Holland America Insurance Co. v. Succession of Roy*, the court noted that "[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." 777 F.2d 992, 997 (5th Cir. 1985). On the other hand, cases like *Humana, Inc. v. Jacobson* hold that "it is not necessary to demonstrate that harm is inevitable . . . . The plaintiff need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." 804 F.2d 1390, 1394 (5th Cir. 1986). *Humana* is distinguishable in some respects, but it at least stands for the proposition that an imminent threat of deprivation is sufficient. So the question is whether there now exists enough of a threat to justify injunctive relief pending final resolution.

3

In this case, the State has acted to remove most of the threats originally challenged in the Complaint. It has, for example, renewed JWHO's license for another year. It has also obtained assurances from various officials that Defendants will not be prosecuted at this time. These actions undeniably removed most of the more tangible threats Plaintiffs originally feared. But they continue to argue irreparable injury in two ways.

First, Plaintiffs contend that merely subjecting them to the administrative process of enforcing the Act will cause irreparable harm. The Court is not persuaded. As noted above, the Clinic will be given "reasonable time" to comply with the new law. Miss. Code Ann. § 41-75-16. During that time, there will be no burden on the Plaintiffs whatsoever because they have already completed—or nearly completed—the application process. Thus, they have nothing to do but sit back and wait. And because Plaintiffs could obtain privileges, it is simply too speculative to say that they will at some point be forced to defend their lack of compliance through the administrative process outlined in Mississippi Code section 41-75-11. If that day comes, then the issue can be revisited as the threat may become imminent. As for now, Plaintiffs conceded at the hearing that they should be required to continue the application process.[1]

Plaintiffs' second and primary contention is that they face the uncertainty of criminal or civil prosecution for operating the Clinic out of compliance with state law. Thus, according to them, they must choose between incurring that risk or shutting down. In *Concerned Citizens of Vicksburg v. Sills*, the court noted that injunctive relief can be appropriate to avoid placing a

---

[1]The Court cited *Deerfield Medical Center v. City of Deerfield Beach* in its TRO regarding the threat of the administrative process, but required additional briefing as to whether *Deerfield* supported a finding of irreparable injury here. 661 F.3d 328, 338 (5th Cir. 1981). Plaintiffs' defense of their position on that point was not persuasive, and *Deerfield* is distinguishable because the plaintiff there had already been denied the right to operate.

plaintiff "between the Scylla of intentionally flouting state law and the Charybdis of foregoing what (they believe) to be constitutionally protected activity in order to avoid being enmeshed in (another) criminal proceeding." 567 F.2d 646, 651 (5th Cir. 1978) (citing *Wooley v. Maynard*, 430 U.S. 705, 710 (1977), quoting *Steffel v. Thompson*, 415 U.S. 452, 462 (1974)).

If Plaintiffs were truly faced with criminal prosecution for acts occurring during the administrative process, then they would present a sufficiently imminent irreparable injury because JWHO is the sole abortion clinic—and essentially the only abortion provider—in the state. Without delving too deeply into the analysis at this point, where a state has a "rational basis to act, and it *does not impose an undue burden*, [it] may use its regulatory power" to control the manner in which abortions are provided. *Gonzales v. Carhart*, 550 U.S. 124, 158 (2007) (emphasis added). An undue burden "exists if a regulation's 'purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability.'" *Id*. at 146 (quoting *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 878 (1992)). Cases such as *Mazurek v. Armstrong* have asked whether the law would require a woman to travel to a different clinic to obtain an abortion. 520 U.S. 968, 974 (1997). And here that is clearly the case. So if these two doctors stop performing abortions for non-speculative fear of prosecution, it would create an "undue burden" and irreparable harm. *See Jackson Women's Health Org. Inc. v. Amy*, 330 F. Supp. 2d 820, 823 (S.D. Miss. 2004) (enjoining regulation that would have effect of closing JHWO).

Defendants essentially agree that the harm would be irreparable if the doctors faced a credible threat of prosecution or closure but argue that the risk here is not immediate enough, observing that various officials have agreed not to prosecute until the administrative process

5

concludes.  Plaintiffs obviously disagree, and observe certain undisputed facts.  First, if the Act is allowed to take effect, they will not yet meet the new qualifications for licensing.  Second, the statutes provide both civil and criminal sanctions for operating out of compliance.  Third, the statutes have never been interpreted.  And fourth, Defendants have never rebutted, despite several opportunities, Plaintiffs' concern that the officials' assurances to abstain from prosecution until later would not preclude future prosecution for operating the Clinic while Plaintiffs seek admitting and staff privileges.

Looking first to the statutory framework, it seems that some of the Plaintiffs' concerns are not credible.  When the State finds the Clinic in non-compliance, it will give notice within 10 days and give the Clinic 10 days to propose a "Plan of Correction" outlining how and when it will correct the deficiencies.  Under section 41-75-16, the Clinic must be given a "reasonable time, under the particular circumstances not to exceed six (6) months from [July 11, 2012], within which to comply with [the Act.]"  If at the end of that period, the doctors still do not have admitting privileges, then the State will officially notify JWHO of its intent to revoke the license and initiate the administrative revocation proceedings.  The procedure to revoke JWHO's license is governed by section 41-75-11 of the Mississippi Code, which provides for a hearing and appellate process which would take at least 60 days to complete.  Plaintiffs' ability to operate the Clinic would continue through any appeal of the final revocation decision of the Department of Health because the statutory section allowing for an appeal specifically provides that "[p]ending final disposition of the matter, the status quo of the applicant or licensee shall be preserved, except as the court otherwise orders in the public interest."  Miss. Code Ann. § 41-75-23.

Finally, section 41-75-26 criminalizes operation of an abortion clinic out of compliance with the licensing requirements and provides a civil remedy for injunctive relief against violations of the abortion licensing law:

> any violation of any provision of this chapter regarding abortion facilities or of the rules, regulations and standards promulgated in furtherance thereof . . . shall be punishable by a fine not to exceed One Thousand Dollars ($1,000.00) for each such offense. Each day of continuing violation shall be considered a separate offense.

While this statute could be interpreted to permit prosecution or civil litigation over any knowing operation of an abortion facility that fails to comply with applicable standards even while corrective action is sought, the statute must be read together with the other sections pertaining to licensing requirements governing abortion facilities. *See United States v. Rodriguez*, 60 F.3d 193, 196 (5th Cir. 1995) (noting *in pari materia* rule of statutory construction which "allows [the Court] to consider all statutes that relate to the same topic; therefore, if a thing in a subsequent statute comes within the reason of a former statute, [the Court] transpose[s] the former statute's meaning to the thing in the subsequent statute").

When read in harmony, the relevant statutes contemplate (1) that abortion facilities are given a period of time within which to comply with newly-adopted licensing standards and (2) "the status quo of the applicant or licensee shall be preserved" during that process—i.e., it shall retain its license and be able to continue to operate lawfully pending final disposition of an appeal of a revocation decision. Miss. Code Ann. §§ 41-75-16, 41-75-23. The Court reads these provisions together to mean that no prosecution or civil proceeding may be maintained for operating an abortion facility out of compliance with the licensing standards while the state

administrative and appeal process are ongoing. If this were not the case, the maintenance of the status quo during an appeal would be meaningless.

But that does not necessarily resolve the issue because ambiguity remains as to whether Plaintiffs could face sanctions for current practices after the administrative process concludes. Granted, Defendant Smith has stated that "a clinic's violation of licensure requirements does not become subject to criminal or civil penalty until" the administrative process runs its course. Def. Smith's Resp. [15] a 1–2. He offers no further explanation, but seemingly relies on section 41-75-23, which protects Plaintiffs by maintaining the status quo pending final disposition of the matter. But section 41-75-23 also states that the status quo shall be preserved "except as the court otherwise orders in the public interest." Miss. Code Ann. § 41-75-23.

As used in this context, a state court could, based on the "public interest" exception in the statute, revoke the status quo and thereby subject Plaintiffs to criminal and civil liability for having operated out of compliance. "Public interest" is vague in this context. *See Women's Med. Ctr. of Nw. Houston*, 248 F.3d at 422 ("Especially in the context of abortion, a constitutionally protected right that has been a traditional target of hostility, standardless laws and regulations such as these open the door to potentially arbitrary and discriminatory enforcement.").

And the possibility of a "public interest" exception to the protection section 41-25-23 provides lends additional credence to Plaintiffs' argument that the Defendants, while saying they will not prosecute now, have never promised to abstain from future prosecution for the days of non-compliance that will begin when the Act takes effect. Defendants had an opportunity to extinguish that argument in their supplemental response but did not. When the issue was raised

again at the hearing, Defendants' counsel merely stated, "I would almost venture to say that there's no intent on prosecuting any of these doctors and taking their license away."[2]  Given the highly charged political context of this case and the ambiguity still present, the Court finds that there would be a chilling effect on the Plaintiffs' willingness to continue operating the Clinic until they obtained necessary privileges.  Therefore, an irreparable injury currently exists.[3]

As for the other factors for injunctive relief, the Court finds that there exists a substantial likelihood of success on the merits and that the threatened injury—the closure of the state's only clinic creating a substantial obstacle to the right to choose—outweighs any harm that will result if the injunction is granted.  This is especially true in light of the Defendants' promises that they have no intention to pursue civil or criminal sanctions at this time.  Finally, the grant of an injunction will not disserve the public interest, an element that is generally met when an injunction is designed to avoid constitutional deprivations.  A preliminary injunction should therefore be entered.

---

[2] It should be noted as well that there is no record evidence that Defendant Smith would not prosecute.  Although he made that assurance in a response filed by counsel, there was no affidavit provided due to the emergency nature of the motion for TRO, and Smith did not personally appear at the hearing.

[3] Plaintiffs also make peripheral reference to the possibility that disciplinary penalties may at some future time be levied against the doctors and nurses who staff the Clinic for their actions in continuing to provide abortions while pursuing compliance with the Act.  *See, e.g.*, Pls.' Supplemental Mem. [19] at 5 (referencing "the prospect of criminal *and disciplinary* penalties") (emphasis added).  They have, however, produced no record evidence, despite many opportunities to do so, showing a credible threat of disciplinary action that is not entirely speculative.  *See Holland Am. Ins. Co.*, 777 F.2d at 997 ("Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant.").  Plaintiffs have also failed to demonstrate that they face a legitimate threat of any negative repercussions for having operated as sections 41-75-16 and 41-75-23 allow them to do.  That said, if circumstances change and the threat of disciplinary proceedings or penalties materialize, the Court's order can at that time be modified to reflect a then-substantial threat of irreparable harm.

Such a finding does not, however, necessitate enjoining the entire Act at this time. In *Ayotte v. Planned Parenthood of N. New England*, the Court observed that "when confronting a constitutional flaw in a statute, we try to limit the solution to the problem. We prefer, for example, to enjoin only the unconstitutional applications of a statute while leaving other applications in force." 546 U.S. 320, 328–29 (2006) (citations omitted). Undertaking this task requires the Court to consider three "interrelated principles": (1) "we try not to nullify more of a legislature's work than is necessary"; (2) the Court should not rewrite state law; and (3) the Court should not strike portions of the law if the State would prefer that the entire statute fail. *Id*. at 329–30.

In this case, the Defendants stated that if injunctive relief is provided, they would want an order requiring Plaintiffs to continue their efforts to comply with the Act. Plaintiffs likewise agreed that they should be required to continue that process. Accordingly, the Court enjoins Defendants from (1) seeking to employ the judicial override found in section 41-75-23 in order to initiate criminal or civil penalties for operating the clinic without the privileges the Act requires and (2) later enforcing those penalties for operating without privileges while engaged in the administrative process.

III.   Conclusion

For these reasons, the motion for preliminary injunction [5] is granted in part. The Act will be allowed to take effect, but Plaintiffs will not be subject to the risk of criminal or civil penalties at this time or in the future for operating without the relevant privileges during the administrative process. This will maintain the status quo in this litigation because the Defendants will be precluded from taking action that they do not now contemplate while

Plaintiffs will be permitted to operate lawfully while continuing their efforts to obtain privileges as they said they would.[4]

Finally, it should be observed that this case presents a fluid situation. As noted, we do not yet know whether the Clinic will obtain admitting and staff privileges. As both parties stated during the hearing, the resolution of that issue will impact the ultimate issues in this case. Should changed circumstances warrant further or different preliminary injunctive relief before this matter proceeds to trial, this Order would not prevent any party from seeking such other relief.

**SO ORDERED AND ADJUDGED** this the 13th day of July, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[4] Defendants observe that enjoining the entire Act would actually alter the status quo because Plaintiffs would be disincentivized to continue seeking privileges, and their success or failure in obtaining privileges could impact the ultimate analysis.