**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

JACKSON WOMEN'S HEALTH
ORGANIZATION, on behalf of itself and its
patients, *et al.*,

               Plaintiffs,

v.

MARY CURRIER, M.D., M.P.H., in her
official capacity as State Health Officer of the
Mississippi Department of Health, *et al.*,

              Defendants.

Case No. 3:12-CV-00436-DPJ-FKB

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, EXPENSES, AND COSTS**

**Table of Contents**

**Page**

Preliminary Statement..................................................................................................... 1

Argument ......................................................................................................................... 3

I.     Plaintiffs' Requested Attorney's Fees Should Be Granted................................... 3

        A.     Plaintiffs' Requested Hourly Rates Should Be Granted............................ 3

               1.     The Center and Paul, Weiss's Requested
                      New York Rates Should Be Granted. ........................................... 3

               2.     Mr. McDuff's Requested Local Rates Should Be Granted........................ 7

               3.     A Lower Hourly Rate for Discovery Work Is Not Appropriate. ............... 8

        B.     No Reduction from Plaintiffs' Requested Lodestar Is Appropriate....................... 9

               1.     The Overall Lodestar Is Reasonable. ........................................ 10

               2.     Defendants' Scattershot Lodestar Objections Are Meritless. ................... 13

                     (a)     No Reduction for "Block Billing" Is Appropriate. ....................... 13

                     (b)     No Reduction for "Vague" Time Entries Is Appropriate............. 14

                     (c)     No Reduction for "Duplicative" Billing Is Appropriate. .............. 14

                     (d)     No Reduction for "Clerical" Tasks Is Appropriate....................... 15

                     (e)     No Reduction for "Unsuccessful Claims" Is Appropriate. ........... 16

II.    Plaintiffs' Requested Expenses and Costs Should Be Granted. ...................................... 16

        A.     Plaintiffs' Travel Expenses Should Be Reimbursed............................................ 17

        B.     Plaintiffs' Shipping Expenses Should Be Reimbursed....................................... 17

        C.     Plaintiffs' Research Expenses Should Be Reimbursed........................................ 17

        D.     Plaintiffs' Videographer Expense Should Be Reimbursed................................... 18

Conclusion ................................................................................................................... 19

Certificate of Service .................................................................................................. 20

## Table of Authorities

**Page(s)**

**Cases**

*Anderson* v. *City of McComb*,
2016 WL 4261777 (S.D. Miss. Apr. 4, 2016)...........................................................7

*Auto Parts Mfg. Miss. Inc.* v. *King Constr. of Houston, LLC*,
258 F. Supp. 3d 740 (N.D. Miss. 2017)....................................................................18

*Baisden* v. *I'm Ready Prods., Inc.*,
793 F. Supp. 2d 970 (S.D. Tex. 2011) .....................................................................17

*Base Metal Trading, Ltd.* v. *OJSC Novokuzketsky Aluminum Factory*,
31 F. App'x 159 (5th Cir. 2001) ..............................................................................14

*Bell* v. *Texaco, Inc.*,
2011 WL 2429324 (S.D. Miss. June 13, 2011) .........................................................8

*Brown* v. *Miss. Dep't of Health*,
2013 WL 12128785 (S.D. Miss. Mar. 5, 2013) .........................................................8

*Butler* v. *Rapides Found.*,
365 F. Supp. 2d 787 (W.D. La. 2005).......................................................................18

*Carrier* v. *Weber Prop. Grp., L.L.C.*,
2017 WL 4232535 (E.D. La. June 14, 2017),
*R&R adopted*, 2017 WL 4226161 (E.D. La. Sept. 21, 2017) ..................................9

*City of Riverside* v. *Rivera*,
477 U.S. 561 (1986).................................................................................................10

*Clark* v. *Centene Corp.*,
2015 WL 6962894 (W.D. Tex. Nov. 10, 2015).........................................................18

*Davis* v. *Abbott*,
781 F.3d 207 (5th Cir. 2015) .....................................................................................6

*Davis* v. *Perry*,
991 F. Supp. 2d 809 (W.D. Tex. 2014)..................................................................6, 14

*DeLeon* v. *Abbott*,
2015 WL 13308902 (W.D. Tex. Nov. 30, 2015),
*aff'd*, 687 F. App'x 340 (5th Cir. 2017).................................................................14

*DP Solutions, Inc.* v. *Rollings*,
353 F.3d 421 (5th Cir. 2003) ...................................................................................16

**Page(s)**

*Dugas* v. *Mercedes-Benz USA, LLC*,
2015 WL 1198604 (W.D. La. Mar. 16, 2015) ........................................................8

*Edwards* v. *Beck*,
2016 WL 6915306 (E.D. Ark. Mar. 11, 2016) ........................................................6

*Fiume Indust., Inc.* v. *Am. Express Travel Related Servs. Co., Inc.*,
2009 WL 4667542 (S.D. Tex. Dec. 1, 2009) ........................................................16

*Fox* v. *Vice*,
563 U.S. 826 (2011)........................................................................................9

*Gerszten* v. *Univ. of Pittsburgh Cancer Inst. Cancer Ctrs.*,
2009 WL 5103160 (W.D. Pa. Dec. 15, 2009) ......................................................15

*Hannon* v. *Nevitt*,
2013 WL 12290978 (N.D. Tex. Mar. 14, 2013) ....................................................17

*Hensley* v. *Eckerhart*,
461 U.S. 424 (1983).........................................................................................14

*Hollowell* v. *Orleans Regional Hosp. LLC*,
217 F.3d 379 (5th Cir. 2000) ...........................................................................13

*Idom* v. *Natchez-Adams School Dist.*,
2016 WL 320954 (S.D. Miss. Jan. 25, 2016) ........................................................8

*Jackson Women's Health Org.* v. *Currier*,
940 F. Supp. 2d 416 (S.D. Miss. 2013)................................................................2

*Jones* v. *Singing River Health Sys.*,
2016 WL 3248449 (S.D. Miss. June 10, 2016) ...................................................7, 8

*Lewallen* v. *City of Beaumont*,
2009 WL 2175637 (E.D. Tex. July 20, 2009),
*aff'd*, 394 F. App'x 38 (5th Cir. 2010)............................................................17, 18

*Lighthouse Rescue Mission, Inc.* v. *City of Hattiesburg*,
2014 WL 1653108 (S.D. Miss. Apr. 23, 2014)........................................................8

*McClain* v. *Lufkin Industries*,
649 F.3d 374 (5th Cir. 2011) ............................................................................4

*Millennium Rest. Grp., Inc.* v. *City of Dallas*,
2002 WL 1042117 (N.D. Tex. May 21, 2002) ......................................................10

*Minter-Smith* v. *Mukasey*,
2008 WL 2164565 (S.D. Miss. May 22, 2008) .....................................................14

**Page(s)**

*Morrow* v. *Ingram*,
   2011 WL 815105 (S.D. Miss. Mar. 1, 2011) ...............................................7

*Mosley* v. *Nordquist*,
   2016 WL 5794480 (S.D. Miss. Sept. 30, 2016).........................................8

*Payne* v. *Univ. of S. Miss.*,
   2016 WL 698130 (S.D. Miss. Feb. 19, 2016)...........................................7

*Penthouse Owners Ass'n, Inc.* v. *Certain Underwriters at Lloyd's, London*,
   2011 WL 6699447 (S.D. Miss. Dec. 21, 2011) ........................................8

*Perez* v. *Bruister*,
   2015 WL 5712883 (S.D. Miss. Sept. 29, 2015) (Jordan, J.)................8, 9

*Planned Parenthood of Greater Tex. Surgical Health Servs.* v. *Abbott*,
   734 F.3d 406 (5th Cir. 2013) ..................................................................12

*Planned Parenthood of Greater Tex. Surgical Health Servs.* v. *Abbott*,
   748 F.3d 583 (5th Cir. 2014) ..................................................................12

*Riddell* v. *Howmedica Osteonics Corp.*,
   2015 WL 5167039 (S.D. Miss. Sept. 3, 2015) (Jordan, J.).....................6

*United States ex rel. Rigsby* v. *State Farm Fire & Casualty Co.*,
   2014 WL 691500 (S.D. Miss. Feb. 21, 2014)........................................5, 8

*Riley* v. *City of Jackson*,
   2 F. Supp. 2d 864 (S.D. Miss. 1997).......................................................7

*Rodriguez* v. *Mechanical Tech. Servs., Inc.*,
   2015 WL 8362931 (W.D. Tex. Dec. 8, 2015) ........................................16

*Schaeffer* v. *Warren Cty.*,
   2017 WL 5709640 (S.D. Miss. Nov. 27, 2017)........................................8

*Schumacher* v. *AK Steel Corp. Ret. Acc. Pension Plan*,
   995 F. Supp. 2d 835 (S.D. Ohio 2014) .....................................................6

*Silicon Knights, Inc.* v. *Epic Games, Inc.*,
   917 F. Supp. 2d 503 (E.D.N.C. 2012)....................................................18

*Siragusa* v. *Arnold*,
   2015 WL 518270 (N.D. Tex. Feb. 9, 2015)..............................................8

*Stockstill* v. *City of Picayune*,
   2017 WL 6327578 (S.D. Miss. Dec. 11, 2017) ........................................7

**Page(s)**

*Stuart* v. *Walker-McGill*,
  2016 WL 320154 (M.D.N.C. Jan. 25, 2016) ............................................................6

*Volvo Fin. Servs.* v. *Williamson*,
  2018 WL 1096852 (S.D. Miss. Feb. 28, 2018) ........................................................18

*Whole Woman's Health* v. *Hellerstedt*,
  136 S. Ct. 2292 (2016) ...............................................................................................1

*Whole Woman's Health* v. *Lakey*,
  769 F.3d 285 (5th Cir. 2014), *vacated*, 135 S. Ct. 399 (2014) ..............................12

## Statutes

28 U.S.C. § 1920 ...............................................................................................................18

28 U.S.C. § 1920 ...............................................................................................................18

42 U.S.C. § 1988 ...............................................................................................................18

Fed. R. App. P. 41(d)(1) ...................................................................................................13

## Other Authorities

Daniel Grossman et al., *Change in Abortion Services After Implementation*
  *of a Restrictive Law in Texas*, 90 Contraception 496 (2014) ..................................12

Manny Fernandez, *Decision Allows Abortion Law,*
  *Forcing 13 Texas Clinics to Close*, N.Y. Times, Oct. 3, 2014 ...............................12

## Preliminary Statement

Defendants' opposition to Plaintiffs' attorney's fees motion misrepresents the complexity of this case, ignores the legal and factual circumstances at its various phases, and makes speculative and vague claims about how the case could have been litigated differently.[1]

The highly significant and favorable result achieved by Plaintiffs' counsel on the admitting privileges claim was hardly inevitable but rather the product of a six-year struggle through all levels of the federal courts, including the U.S. Supreme Court.  The hours that Plaintiffs' counsel put in were a necessary and proportional response to the urgent, high-stakes situation created by Defendants' unconstitutional conduct, and Defendants' refusal to concede any legal or factual issue in the case through multiple appeals.

Indeed, Defendants' current claim that this was a "simple" case that could have been litigated in far fewer hours is contradicted by their own representation to the U.S. Supreme Court, when they sought certiorari, that this case raised issues of first impression on important principles of constitutional law.  And that is exactly what this case did.  This case was the *first* to challenge the recent spate of admitting privileges laws enacted at the state level, and Plaintiffs' counsel did not have the benefit of the legal and factual arguments developed in other cases.  The constitutionality of these laws led to a Circuit split that was ultimately resolved by the U.S. Supreme Court in *Whole Woman's Health* v. *Hellerstedt*, 136 S. Ct. 2292 (2016).

Further, Defendants have no evidence for the central premise of their opposition: that Plaintiffs should have won this case more cheaply.  Although Plaintiffs' counsel spent less than 500 hours per year litigating this case, and provided dozens of pages of detailed billing

---

[1]   Indeed, in light of Defendants' excessive objections, which compelled counsel to devote substantial time to this reply, Plaintiffs were tempted to request fees for their substantial time (more than 100 hours) spent on this application, but have decided not to do so.

records, Defendants argue that their total fees award should be reduced by *two-thirds*. Defendants arrive at the lower figure only by applying unreasonably low hourly rates and arbitrarily excluding hours from the lodestar; they also arbitrarily write off entirely customary expenses and costs.  Each of Defendants' arguments should be rejected.

*First*, as to the rates, Defendants do not dispute that the rates requested by the Center and Paul, Weiss are reasonable in their home District, but contend that lower Mississippi rates should be applied based on the speculation that Mississippi counsel could have been obtained to litigate this case in its entirety.  There is absolutely no evidence that any additional, qualified Mississippi counsel was available to take on this lengthy, time-consuming, costly, and high-risk case with no guarantee of compensation—just as there was no evidence to support Defendants' contention that physicians willing to provide abortion services would spring up throughout Mississippi if the Clinic were closed.  *See Jackson Women's Health Org.* v. *Currier*, 940 F. Supp. 2d 416, 420–21 (S.D. Miss. 2013).  To the contrary, evidence establishes that no Mississippi lawyer has ever handled such a case without assistance from out-of-state co-counsel, and the Center and Paul, Weiss are thus entitled to compensation at their home rates.  Mr. McDuff's requested local rate is also well in line with what this Court has previously awarded.

*Second*, as to the lodestar, the 2,718 hours expended were necessary to overcome Defendants' six-year defense of an unconstitutional law before three courts, which required Plaintiffs to seek a temporary restraining order on an emergency basis and two preliminary injunctions on an expedited basis.  Given what was at stake, Plaintiffs were not obliged to cut corners.  Because Defendants' objections are vague and unsupported, this Court is not obliged to engage in a *sua sponte* review of six years of billing records.  The record and common sense show that Defendants' objections are meritless.  But, in an effort to respond to some of

Defendants' claims, Plaintiffs have further exercised billing judgment and reduced their requested lodestar hours to 2,442.37.  *See* Reply App'x B.

*Third*, with two minor exceptions, Defendants' objections to the expenses and costs are unfounded.  Plaintiffs' counsel are entitled to recover out-of-pocket costs such as travel for depositions and PACER and library research.  A fee-paying client would have reimbursed each of these expenses, and so Defendants—having litigated and lost—should now pay them.

## <u>Argument</u>

### I.      Plaintiffs' Requested Attorney's Fees Should Be Granted.

Defendants contest both the rates and hours included within Plaintiffs' lodestar calculation.  Opp'n 4–26.[2]  Defendants' arguments are meritless.[3]

#### A.      Plaintiffs' Requested Hourly Rates Should Be Granted.

Defendants object to the proposed hourly rate of every single one of Plaintiffs' attorneys.  Whereas Plaintiffs' proposed rates between $250 and $675 (*see* Mot. App'x A), Defendants propose rates between $150 and $350 (Opp'n 5–13).  *See* Reply App'x A. Defendants' proposed lower rates are unsupported by law or fact.

##### 1.      The Center and Paul, Weiss's Requested New York Rates Should Be Granted.

Defendants' proposed hourly rates for the Center and Paul, Weiss are the rates that, Defendants say, would be reasonable in the Southern District of Mississippi.  Opp'n 9–13. Defendants do *not* contest Plaintiffs' showing that the hourly rates sought by the Center and

---

[2]   Citations to "Mot." are to Plaintiffs' opening brief (Dkt. No. 218); "Opp'n," to Defendants' brief (Dkt. No. 222).  Capitalized terms are defined in Plaintiffs' opening brief.

[3]   Defendants concede that Plaintiffs are entitled to $428,966.50 of attorney's fees, *see* Dkt. No. 222-16 at 1, and $13,884.49 of expenses and costs, *see* Dkt. No. 222-20 at 1; Dkt. No. 222-21 at 4.  At a minimum, these uncontested amounts should be granted.

Paul, Weiss are reasonable rates in the Southern District of New York, their home jurisdiction. *See* Mot. 12–13. Thus, Defendants' objection to these rates rests *solely* on Defendants' argument that out-of-district rates are not appropriate under the doctrine of *McClain* v. *Lufkin Industries*, 649 F.3d 374 (5th Cir. 2011). Opp'n 13–17. Because out-of-state rates are appropriate here under the *McClain* standard (Mot. 7–12), Plaintiffs' proposed rates should be granted.

   Defendants misrepresent the *McClain* standard, seizing upon *McClain*'s mention of the word "necessity." Opp'n 14 (quoting *McClain*, 649 F.3d at 382). But the relevant inquiry is whether out-of-state counsel was "necessary *to secure adequate representation*." 649 F.3d at 383 (emphasis added). Plaintiffs have submitted ample evidence to satisfy the *McClain* standard, including declarations from experienced local lawyers who explained why Plaintiffs could not have secured adequate representation without out-of-state counsel. *See* McDuff Decl. ¶¶ 9–13; Johnson Decl. ¶¶ 6–11.[4] This was due to a confluence of factors, including the time and cost outlays required, the lack of any guaranteed compensation or reimbursement, the complexity and likely duration of the case, the controversial subject matter, the need for experience with a specialized area of constitutional law and expert medical testimony, the need to seek emergency relief at the outset, and Fifth Circuit precedent that made success uncertain. *See* Mot. 8–12.

   In response to Plaintiffs' showing, Defendants provide no actual evidence that an adequate team of exclusively local attorneys was available and willing to take on this matter in late June 2012, despite all the factors discussed above. Defendants simply assert that the ACLU of Mississippi ("ACLU-MS") or Mark Wann or Beth Orlansky "*might*" have been able to represent Plaintiffs. Opp'n 16 (emphasis added). This is speculation. Defendants state that Mr.

---

[4] Defendants *admit* that Mr. McDuff is "perhaps the most experienced and successful civil rights attorney in this and neighboring jurisdictions." Opp'n 12. His testimony that this case could not have been litigated without out-of-state counsel is thus entitled to great weight.

Wann represented the Clinic in a prior case 14 years ago and that Ms. Orlansky represents the

Clinic in a case that is pending now.  But in his case, Mr. Wann was local counsel to the Center,

and in her case, Ms. Orlansky is one of the local counsel to the Center and Paul, Weiss.  That

hardly suggests that Mr. Wann or Ms. Orlansky had the capacity to *replace* the efforts of the

Center and Paul, Weiss or that they were *willing* to do so.  As is clear from the attached

declarations, neither would have or could have handled this case without the assistance of out-of-

state counsel like the Center and Paul, Weiss.  *See* Wann Decl. ¶¶ 2–4; Orlansky Decl. ¶¶ 2–5.

The attached declaration of Paloma Wu, former Legal Director for ACLU-MS, similarly states

that ACLU-MS could not and would not have taken this case without enlisting out-of-state

lawyers from the national ACLU to be lead counsel.  Wu Decl. ¶¶ 2–6.[5]

The record here is nothing like that in *United States ex rel. Rigsby* v. *State Farm Fire & Casualty Co.*, 2014 WL 691500 (S.D. Miss. Feb. 21, 2014) (cited Opp'n 16).  Here,

Plaintiffs initially offered declarations from two attorneys expert in civil rights litigation in

Mississippi and now have provided three more.  In *Rigsby*, plaintiffs relied on a declaration from

their out-of-state counsel.  *Id.* at *11.  As the *Rigsby* Court noted, "there is no indication that [he]

has ever practiced in Mississippi or is otherwise familiar with any Mississippi law firms beyond

the one he references."  *Id.*  Moreover, in *Rigsby*, defendants produced a rebuttal affidavit from

an uninvolved local attorney that "identifie[d] by name" several Mississippi attorneys who could

have handled the case.  Here, Defendants offer no rebuttal evidence, only speculation.

---

[5]   The Center and Paul, Weiss worked more than 2,600 hours.  Even assuming the validity of all of Defendants' objections, more than 1,600 of these were reasonable.  These other attorneys could not have devoted even that lower number of hours.  *See* Wann Decl. ¶ 3; Orlansky Decl. ¶ 4; Wu Decl. ¶¶ 4, 6.  Moreover, it would have taken them longer given that they do not specialize in this area.  *See* McDuff Decl. ¶ 9.

Defendants fault Plaintiffs for not detailing "steps that were actually taken to attempt to secure local counsel." Opp'n 15.  This puts the cart before the horse.  Plaintiffs *did* secure a local attorney, Mr. McDuff, who could not have litigated this case alone and knows of no local attorney who could have.  McDuff Decl. ¶¶ 9–13.  Since no qualified local team was available, Plaintiffs are not obliged to prove that they engaged in a futile effort to retain such non-existent persons, especially when this complex case needed to be filed in a matter of days. *See Stuart* v. *Walker-McGill*, 2016 WL 320154, at \*15–16 (M.D.N.C. Jan. 25, 2016) (rejecting argument that plaintiff show it "tried to engage specific [local] attorneys who turned down the work"); *Schumacher* v. *AK Steel Corp. Ret. Acc. Pension Plan*, 995 F. Supp. 2d 835, 846 (S.D. Ohio 2014) ("[P]laintiff need not demonstrate that he was turned down by every lawyer in [the state] before agreeing to representation by out-of-town lawyers.").[6]

Separately, Defendants concede that the *McClain* standard does not apply to the hourly rates for appellate work.  *See* Mot. 12; *Riddell* v. *Howmedica Osteonics Corp.*, 2015 WL 5167039, at \*2 (S.D. Miss. Sept. 3, 2015) (Jordan, J.) (holding that "failure to argue a point in response amounts to a concession of the issue").  Thus, at a minimum, the Center and Paul, Weiss should receive their requested rates for the 510.9 hours spent in the Fifth Circuit and the 187.65 hours spent opposing Defendants' petition for certiorari.  *See* Dkt. No. 222-14 at 7–8.[7]

---

[6]   *Davis* v. *Perry*, 991 F. Supp. 2d 809 (W.D. Tex. 2014) (cited Opp'n 14), was reversed by the Fifth Circuit on the ground that plaintiffs there were not "prevailing parties" and thus not entitled to attorney's fees.  *Davis* v. *Abbott*, 781 F.3d 207 (5th Cir. 2015).  As a result, the Fifth Circuit did not reach the District Court's finding that out-of-district counsel was not necessary in the circumstances of that redistricting case.

[7]   In *Edwards* v. *Beck*, 2016 WL 6915306 (E.D. Ark. Mar. 11, 2016) (cited Opp'n 9), the hours were much lower, and the Center did not seek out-of-district rates.  The $300/hour rate awarded to Ms. Rikelman there is the prevailing rate in Arkansas, not New York.

In the alternative, if this Court finds that the *McClain* standard is not satisfied, the Court should compensate the Center and Paul, Weiss at a blended rate of $400/hour, the local rate used for complex federal litigation in a case Defendants themselves cite.[8]

### 2. Mr. McDuff's Requested Local Rates Should Be Granted.

As set forth in Plaintiffs' motion, a rate of $450/hour is reasonable for the services of Mr. McDuff.  *See* Mot. 14; McDuff Decl. ¶¶ 7–8; Johnson Decl. ¶¶ 12–13.  Defendants admit that Mr. McDuff is a "well-known, highly experienced and qualified lawyer, having spent more than 35 years litigating civil rights cases at all levels, including several reproductive rights cases in this Court" and "perhaps the most experienced and successful civil rights attorney in this and neighboring jurisdictions."  Opp'n 8, 12.  Yet, Defendants contend that Mr. McDuff's rate should be reduced to $350/hour.  Opp'n 5–9.  The cases cited by Defendants do not support a lower rate.  These cases involve less experienced attorneys and/or less complex matters, such as damages for the violation of civil rights of a single plaintiff.  This case was truly an "impact litigation" necessary to preserve the constitutional rights of women statewide.  Some of the cases Defendants cite are also too old to be probative of current market rates.[9]

---

[8]   *Jones* v. *Singing River Health Sys.*, 2016 WL 3248449, at *3–4 (S.D. Miss. June 10, 2016) (cited Opp'n 6 n.6) (holding that "a $400 hourly rate is proper in this jurisdiction for an experienced attorney handling complex litigation" and applying that blended rate to the hours of 24 attorneys).  In *Jones*, the Court enhanced the lodestar with a multiplier of 1.5—meaning that the Court effectively used an hourly rate of $600/hour.  *See Jones*, 2016 WL 3248449, at *6.  Here, Plaintiffs have not sought any enhancement.  *See* Mot. 6–7.

[9]   *See Anderson* v. *City of McComb*, 2016 WL 4261777 (S.D. Miss. Apr. 4, 2016) (cited Opp'n 7) (wrongful termination); *Stockstill* v. *City of Picayune*, 2017 WL 6327578, at *3 (S.D. Miss. Dec. 11, 2017) (cited Opp'n 7) ("relatively simple freedom of speech case"; lawyer with 8 years less experience); *Morrow* v. *Ingram*, 2011 WL 815105, at *1 (S.D. Miss. Mar. 1, 2011) (cited Opp'n 7) ("time spent in monitoring the implementation of the settlement agreement"); *Riley* v. *City of Jackson*, 2 F. Supp. 2d 864, 878 (S.D. Miss. 1997) (cited Opp'n 7) (revocation of reporter's press credentials; lawyers with 10 and 5 years of experience); *Payne* v. *Univ. of S. Miss.*, 2016 WL 698130 (S.D. Miss. Feb. 19, 2016) (cited Opp'n 7 n.8)

The $350 hourly rate proposed by Defendants is $25 *less* than this Court awarded to a local attorney with *11 years less* experience, who also affiliated with out-of-state counsel. *See Perez* v. *Bruister*, 2015 WL 5712883 (S.D. Miss. Sept. 29, 2015) (Jordan, J.).  It is also less than the rates awarded in cases cited by Defendants, including to less experienced lawyers.[10]

### 3.    A Lower Hourly Rate for Discovery Work Is Not Appropriate.

Defendants contend that separate, lower rates are required for "discovery."  Opp'n 17–18.  No case law supports this argument.[11]  *See Bell* v. *Texaco, Inc.*, 2011 WL 2429324, at *2 (S.D. Miss. June 13, 2011) (rejecting argument that "discovery disputes required a 'lesser skill package'" and thus warrant lesser rates); *Siragusa* v. *Arnold*, 2015 WL 518270, at *8 (N.D. Tex. Feb. 9, 2015) ("[Using lower rates for discovery] is simply not how billing rates are generally determined or applied in practice or in this Court's awarding fees.").  In *Perez*, 2015 WL

---

(defense of employment case found to be "frivolous"); *Lighthouse Rescue Mission, Inc.* v. *City of Hattiesburg*, 2014 WL 1653108, at *3 n.4 (S.D. Miss. Apr. 23, 2014) (cited Opp'n 7 n.8) (zoning dispute; lawyer with 10 years less experience); *Schaeffer* v. *Warren Cty.*, 2017 WL 5709640, at *10 (S.D. Miss. Nov. 27, 2017) (cited Opp'n 9 n.10) (wrongful termination; lawyer with 11 years less experience); *Idom* v. *Natchez-Adams School Dist.*, 2016 WL 320954, at *3 (S.D. Miss. Jan. 25, 2016) (cited Opp'n 9 n.10) (employment discrimination; *Brown* v. *Miss. Dep't of Health*, 2013 WL 12128785, at *4 (S.D. Miss. Mar. 5, 2013) (cited Opp'n 9 n.10) (employment discrimination; same lawyer as *Schaeffer*).  The Mississippi Bar's 2016 Economic Survey (cited Opp'n 8) is irrelevant because it does not indicate whether the lawyers surveyed are comparable to Mr. McDuff in terms of skill, experience, or reputation.  *See* Mot. 7.

[10]   *See, e.g.*, *Mosley* v. *Nordquist*, 2016 WL 5794480, at *6 (S.D. Miss. Sept. 30, 2016) (cited Opp' 4) ($425/hour to lawyer with 25 years experience); *Rigsby*, 2014 WL 691500, at *14–18 (cited Opp'n 6 n.6) (after rejecting out-of-district rates, awarding $400/hour, $375/hour, and $358/hour to lawyers with between 15 to 20 years of experience); *Jones*, 2016 WL 3248449, at *3–4 (cited Opp'n 6 n.6) (using $400/hour as a blended rate for 24 lawyers); *Penthouse Owners Ass'n, Inc.* v. *Certain Underwriters at Lloyd's, London*, 2011 WL 6699447, at *7 (S.D. Miss. Dec. 21, 2011) (cited Opp'n 3) (awarding an hourly rate of $375/hour).

[11]   *Dugas* v. *Mercedes-Benz USA, LLC*, 2015 WL 1198604 (W.D. La. Mar. 16, 2015) (cited Opp'n 17), reduced rates for "work on a fairly routine discovery motion in a relatively uncomplicated lawsuit."  *Id.* at *4.  This case was neither "uncomplicated" nor "routine."

5712883, for example, this Court cited "heavy and highly contentious discovery" in support of a large lodestar, without applying any reduced rate for discovery. *Id.* at *3.

B.     **No Reduction from Plaintiffs' Requested Lodestar Is Appropriate.**

Plaintiffs submitted detailed time records for the 2,717.95 hours sought. *See* Rikelman Decl. Exs. 1–7; Delaney Decl. Ex. A; McDuff Decl. Ex. A. Defendants have taken a "scorched earth" approach to those records, making 717 objections to 551 entries that (according to Defendants) total to 1,019.97 hours. *See* Dkt. Nos. 222-1–222-16. Each objection repeats one of six boilerplate protests (*see* Dkt. No. 222-1), without *any* individualized explanation.[12]

That approach is clearly inadequate. "[T]he party seeking reduction of the lodestar bears the burden of showing that a reduction is warranted." *Carrier* v. *Weber Prop. Grp., L.L.C.*, 2017 WL 4232535, at *3 (E.D. La. June 14, 2017), *R&R adopted*, 2017 WL 4226161 (E.D. La. Sept. 21, 2017). Given that Defendants' repetition of boilerplate objections failed to satisfy that burden, this Court is not required to "engage in a line-by-line review of over six years worth of invoices." *Perez*, 2015 WL 5712883, at *3; *see Fox* v. *Vice*, 563 U.S. 826, 838 (2011) ("[T]he determination of fees should not result in a second major litigation. . . . [T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." (citations and internal quotation marks omitted)).

Here, the total hours are reasonable for a matter that spanned six years; involved three motions for a temporary restraining order or preliminary injunction, summary judgment, an appeal, an *en banc* petition, a petition for certiorari, eleven fact depositions, nine expert reports,

---

[12]  Defendants say that, if Plaintiffs' requested rates are granted, then additional, unspecified cuts to the lodestar should be made. Opp'n 25–26. In other words, Defendants seek an arbitrary reduction to arrive at Defendants' desired end result. This request is barred by the Fifth Circuit's "two-step" approach, which both sides agree applies here (Mot. 6; Opp'n 3).

and third-party discovery; was the first-filed admitting privileges challenge in the country; and

was necessary to keep open Mississippi's last remaining abortion clinic. Nevertheless, Plaintiffs

have exercised their billing judgment and further reduced their requested lodestar to 2,442.37

hours. *See* Reply App'x B.[13]

### 1. The Overall Lodestar Is Reasonable.

Defendants' assertions that the hours spent on various phases of this litigation

were "excessive" (Opp'n 21–24) are unsupported by the record or common sense. Defendants'

revisionist arguments ring hollow when it was Defendants who passed an unconstitutional law

designed to close the Clinic; then tried to enforce that law on an expedited basis before Plaintiffs

would have an orderly opportunity to challenge its constitutionality; then appealed; and, all the

while, refused to concede any legal or factual issue.[14]

*Complaint, TRO, First Preliminary Injunction.* Plaintiffs' counsel spent just 327

hours on this work, the complexity of which Defendants misrepresent. The work included

conducting the factual and legal investigation to prepare the case on an expedited basis, drafting

the complaint, writing 5 separate briefs (1 over the July 4th holiday), submitting 6 fact and expert

declarations, and preparing for a hearing. *See* Dkt. Nos. 1, 5, 6, 12, 17, 19, 23. Defendants fail

to explain how 327 hours for all of this work is "excessive" (Opp'n 21). In any event, these

---

[13]   The Center has withdrawn its request for all the hours of Lara Rabiee on the Fifth Circuit appeal. *See* Dkt. No. 222-14 at 7. Paul, Weiss has withdrawn its request for (i) all of the objected-to hours of Paula Viola on the Fifth Circuit appeal (*see* Dkt. No. 222-13 at 7–8); and (ii) all of the objected-to hours of Corey Callahan (*see* Dkt. No. 222-16 at 1).

[14]   *City of Riverside* v. *Rivera*, 477 U.S. 561, 580–81 n.11 (1986) ("[Defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." (quoting *Copeland* v. *Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc))); *Millennium Rest. Grp., Inc.* v. *City of Dallas*, 2002 WL 1042117, at *2 (N.D. Tex. May 21, 2002) ("Given the blistering pace of this litigation, the fact that plaintiffs' livelihood was at stake, and the City's vigorous efforts to uphold an unconstitutional ordinance, it was both prudent and prescient for counsel to prepare for every eventuality.").

hours were necessitated by Defendants' expedited attempt (after false reassurances they would engage in a normal rulemaking process) to violate Plaintiffs' constitutional rights.  *See* Mot. 2.

*Discovery*.  Defendants next complain that Plaintiffs spent 1,066.4 hours on discovery.  Opp'n 21–22.  That total is not unreasonable for a case requiring eleven fact depositions, nine expert reports,[15] third-party subpoenas, and several discovery disputes.  *See, e.g.*, Dkt. Nos. 59, 61, 140.  This was the first-filed challenge to the recent spate of "admitting privileges" laws in the country.[16]  Defendants do not identify *any* specific discovery that was in fact unnecessary.  Substantial discovery was necessitated by Defendants' meritless positions— for example, that admitting privileges were medically necessary, or that Plaintiffs *would* be able to obtain admitting privileges (*see* Dkt. No. 20 at 12–13).  At the time, Defendants gave every indication that they would defend this case vigorously, scheduling a hearing to revoke the Clinic's license and opposing the second preliminary injunction even after it became clear that none of the Clinic's physicians would be able to obtain admitting privileges.  As a result, Plaintiffs needed to build a record for a trial (which was scheduled for March 2014).

---

[15]  Under the Case Management Order, the parties were required to serve expert reports between February and April 2013.  *See* Dkt. No. 56.  Plaintiffs served four expert reports in February (Dkt. No. 73); Defendants served three expert reports in March (Dkt. No. 71); and Plaintiffs served two supplemental and rebuttal expert reports in April (Dkt. No. 80).  All of these reports were served *before* the Court granted the second preliminary injunction.  *See* Dkt. No. 81.  After Defendants appealed, expert depositions were stayed.  *See* Dkt. No. 145.

[16]  *See, e.g.*, *Planned Parenthood Se., Inc.* v. *Bentley*, No. 13 Civ. 405 (M.D. Ala.) (filed June 11, 2013); *Planned Parenthood of Wis., Inc.* v. *Van Hollen*, 13 Civ. 465 (W.D. Wis.) (filed June 28, 2013); *Planned Parenthood of Greater Tex. Surgical Health Servs.* v. *Abbott*, No. 13 Civ. 862 (W.D. Tex.) (filed Sept. 26, 2013); *Whole Woman's Health* v. *Lakey*, No. 14 Civ. 284 (W.D. Tex.) (filed Apr. 2, 2014); *June Medical Services LLC* v. *Caldwell*, No. 14 Civ. 525 (M.D. La.) (filed Aug. 22, 2014); *Planned Parenthood of Kansas & Mid-Mo.* v. *Lyskowski*, No. 15 Civ. 4273 (W.D. Mo.) (filed Nov. 30, 2015); *Planned Parenthood of Ark. & E. Okla.* v. *Jegley*, No. 15 Civ. 784 (E.D. Ark.) (filed Dec. 28, 2015).

*Second Preliminary Injunction.*  Defendants also contend that 310.8 hours was too long to assemble the legal and factual record and file the multiple briefs necessary to secure the second preliminary injunction.  Opp'n 22–23.  Defendants now say "the *only* unresolved issue" was whether Plaintiffs had obtained admitting privileges and "it was *clear*" that Plaintiffs had not.  *Id.* (emphasis added).  This is revisionist history.  Defendants' 34-page opposition to that motion did *not* concede that the factual issue was "clear" or that it was the "only" issue.  *See* Dkt. No. 54.  Rather, Defendants re-argued every issue that they now say was "[ ]resolved" by the first motion.

*Fifth Circuit Appeal and Petition for Certiorari.*  Defendants also contend that Plaintiffs spent too long opposing Defendants' unsuccessful appeal (522.9 hours) and petition for certiorari (187.65 hours).  Opp'n 23.  The number of lawyers involved and hours expended are reasonable in light of the complexity and importance of the issues, the expedited schedule, two adverse decisions from the Fifth Circuit while the appeal was pending (which required Rule 28(j) letters, and preparation),[17] and the Fifth Circuit's request that Plaintiffs respond to Defendants' *en banc* petition.  As demonstrated in the Texas cases, *see* n.13, the stakes of the appeal could

---

[17]  On October 31, 2013, while the appeal in this case was pending, the Fifth Circuit stayed a permanent injunction against Texas's admitting privileges law with immediate effect. *Planned Parenthood of Greater Tex. Surgical Health Servs.* v. *Abbott*, 734 F.3d 406, 419 (5th Cir. 2013).  As a result, 11 clinics (one-third of the state's then-remaining clinics) closed the next day.  *See* Daniel Grossman et al., *Change in Abortion Services After Implementation of a Restrictive Law in Texas*, 90 Contraception 496 (2014).  In March 2014, one month before oral argument in this case, the Fifth Circuit issued a final decision rejecting the facial challenge to the Texas law.  *Planned Parenthood of Greater Tex. Surgical Health Servs.* v. *Abbott*, 748 F.3d 583 (5th Cir. 2014).  On October 2, 2014, in a separate as-applied challenge, the Fifth Circuit stayed a permanent injunction against Texas's admitting privileges law, again with immediate effect.  *Whole Woman's Health* v. *Lakey*, 769 F.3d 285 (5th Cir. 2014), *vacated*, 135 S. Ct. 399 (2014).  Before the Supreme Court vacated that order 12 days later, 13 clinics were forced to close.  *See* Manny Fernandez, *Decision Allows Abortion Law, Forcing 13 Texas Clinics to Close*, N.Y. Times, Oct. 3, 2014.

not have been higher.  As such, it was reasonable for Plaintiffs to spend a modest amount of time preparing in advance for the possibility of an adverse panel ruling.  If the panel had incorrectly vacated this Court's injunction, as Defendants urged, it could have done so with immediate effect (as the Court twice did in the Texas cases), requiring Plaintiffs to file a rehearing petition quickly to keep the injunction in place.  *See* Fed. R. App. P. 41(d)(1).  For the same reason, it was appropriate for Plaintiffs to file a thorough opposition to Defendants' petition for certiorari.

*Summary Judgment*.  Lastly, Defendants say that 70.4 hours was too long to obtain summary judgment and a permanent, statewide injunction.  Opp'n 24.  Although Defendants now say the result was a "forgone conclusion" (*id.*), Defendants *refused to consent* to a statewide permanent injunction, so this step too was necessary.  And Defendants again oversimplify the work that was required, which (in addition to the summary judgment motion) included a motion to lift the stay, negotiations with Defendants, two telephone conferences with the Magistrate Judge, and a motion to clarify that the relief would apply statewide.

### 2.    Defendants' Scattershot Lodestar Objections Are Meritless.

#### (a)    No Reduction for "Block Billing" Is Appropriate.

Defendants object to 209 entries (totaling 797.4 hours) on the ground that they were "block billed."  Opp'n 19–21.  While a few of Plaintiffs' time entries did combine multiple tasks, it is often unclear to what Defendants are objecting.  For example, Defendants make block-billing objections to two entries, by the attorney who took the deposition of Mary Currier, that read "Currier deposition prep."  Dkt. 222-13 at 5.

In any event, as Defendants acknowledge, block billing is "not an automatic reason to deny an award of attorneys fees."  Opp'n 20.  This is so when, as here, all tasks are compensable and the records are sufficient for the Court to determine whether the overall time was reasonable.  *See, e.g.*, *Hollowell* v. *Orleans Regional Hosp. LLC*, 217 F.3d 379, 392–93 &

n.18 (5th Cir. 2000) (affirming lack of reduction for "lumped" time entries); *Davis*, 991 F. Supp.

2d at 836–37 (declining to reduce lodestar for blocked billing).  Defendants fail to identify *any*

non-compensable tasks allegedly block billed.  Thus, no lodestar reduction is appropriate.

> **(b)** **No Reduction for "Vague" Time Entries Is Appropriate.**

Defendants object to 329 entries (totaling 721.25 hours) on the ground that the

time diaries for them are "vague."  Opp'n 20–21.  They are not.  The entries provide sufficient

explanation for how the attorney's time was spent, especially when read in the context with the

previous and immediately succeeding entries.  *See Minter-Smith* v. *Mukasey*, 2008 WL 2164565,

at *12 (S.D. Miss. May 22, 2008) (looking to "surrounding entries" to provide "context" for

entries objected to as vague).  Counsel are "not required to record in great detail how each

minute of [their] time was expended."  *Hensley* v. *Eckerhart*, 461 U.S. 424, 437 n.12 (1983).

Defendants' objections are also belied by their ability to categorize most of the entries objected

to as vague by the "phase" of the case to which they pertain.  *See* Dkt. No. 222-14.  For example,

Defendants object to an entry that reads "Review of draft reply papers," even though Defendants

categorized it as relating to the second preliminary injunction.  *See* Dkt. 222-10.  In any event, in

an abundance of caution, Plaintiffs are providing supplemental details.  Delaney Decl. II Ex. D.

> **(c)** **No Reduction for "Duplicative" Billing Is Appropriate.**

Defendants object to 41 entries (totaling 150.45 hours) as "duplicative."  Opp'n

24.  Defendants provide no explanation of *how* these entries were duplicative, leaving Plaintiffs

(and the Court) to guess.  Defendants object, for example, to the fact that multiple attorneys

worked on the Fifth Circuit brief.  *Id.* at 23.  But the fact that multiple attorneys collaborate on a

brief is hardly "duplicative."  *See, e.g.*, *DeLeon* v. *Abbott*, 2015 WL 13308902, at *4 (W.D. Tex.

Nov. 30, 2015), *aff'd*, 687 F. App'x 340 (5th Cir. 2017).  There can be "legitimate reasons" for

multiple attorneys, such as where "time [is] of the essence."  *Base Metal Trading, Ltd.* v. *OJSC*

*Novokuzketsky Aluminum Factory*, 31 F. App'x 159, at *3 (5th Cir. 2001).  Such was the case here, where Plaintiffs had just 57 days (including the Thanksgiving, Christmas, and New Year's holidays) to file their appeal brief and record excerpts.  And Plaintiffs had just 10 days to file a response to Defendants' rehearing petition, as requested by the Fifth Circuit.

Defendants also object to calls or meetings as "duplicative."  *See* Dkt. Nos. 222-2–222-13.  But, because it was necessary for multiple lawyers to collaborate, it was also necessary for those lawyers to talk on the phone or meet with each other from time to time.

Plaintiffs' staffing at depositions and court appearances was also reasonable.  *See, e.g.*, *Gerszten* v. *Univ. of Pittsburgh Cancer Inst. Cancer Ctrs.*, 2009 WL 5103160, at *4 (W.D. Pa. Dec. 15, 2009) ("Based upon the Court's many years as a trial attorney, the Court finds it quite reasonable and neither redundant nor excessive to have an associate or second chair at depositions . . . .").  While Defendants complain that Plaintiffs sent 2 or 3 lawyers to the same deposition, so did Defendants.  *See* Delaney Decl. II Ex. F.   Likewise, both sides sent 3 lawyers to the preliminary injunction hearing.  Dkt. 136 at 2.  And, the telephonic status conferences with Magistrate Judge Ball (*see* Opp'n 2) were short and required no travel.  It was thus more efficient for the multiple lawyers involved with the relevant issues to participate.

**(d)**     **No Reduction for "Clerical" Tasks Is Appropriate.**

Defendants also object to 89 entries (totaling 228.15 hours) on the ground that they were spent on "clerical" tasks that purportedly should have been performed by paralegals. Opp'n 24–25.  The objected-to tasks include: drafting legal briefs and legal research memos and negotiating by letter or phone with opposing counsel.  *See* Dkt. Nos. 222-2–222-6, 222-9, 222-11–222-13.  These tasks were not appropriate for paralegals.  In addition, Paul, Weiss has already written off more than 900 hours from paralegals and other support staff.  Delaney Decl. II ¶ 5.  No further reduction is appropriate.

15

(e)      No Reduction for "Unsuccessful Claims" Is Appropriate.

Defendants object to 50 entries (totaling 67.25 hours) on the ground that they do not relate to a successful claim.  Opp'n 25.  The *only* unsuccessful claim was the OB/GYN claim, and Defendants do not show that any of the entries at issue relate to that claim.  Instead, Defendants argue that Plaintiffs should be denied the hours spent on Defendants' motion to stay discovery because that motion was granted.  But the fact that Plaintiffs lost one non-dispositive motion does not create an "unsuccessful claim."  *See DP Solutions, Inc.* v. *Rollings*, 353 F.3d 421, 434 (5th Cir. 2003) ("[A] party may recover for time spent on unsuccessful motions as long as it succeeds in the overall claim."); *Rodriguez* v. *Mechanical Tech. Servs., Inc.*, 2015 WL 8362931, at *4 (W.D. Tex. Dec. 8, 2015) ("The Court will not deny time spent on motions that were tied to advancing the course of litigation solely on the basis that the Plaintiffs did not prevail on them.").

Defendants also object to other tasks—such as status conferences with the Court and dissolving the discovery stay—that were clearly necessary to move this case to a successful conclusion.  Plaintiffs should be fully compensated for these tasks.  *See, e.g.*, *Fiume Indust., Inc.* v. *Am. Express Travel Related Servs. Co., Inc.*, 2009 WL 4667542, at *5 (S.D. Tex. Dec. 1, 2009)  (awarding attorney's fees for hours spent at status conference).

## II.    Plaintiffs' Requested Expenses and Costs Should Be Granted.

Finally, Defendants object to more than $30,000 of Plaintiffs' expenses.  Opp'n 26–29.  With two minor exceptions, these objections are meritless and Plaintiffs' (slightly revised) request for expenses should be granted.[18]

---

[18]   Paul, Weiss has reduced its requested costs by $70.55 in response to Defendants' objections.  Delaney Decl. II ¶¶ 16–17.  Plaintiffs' revised request is set forth in Reply Appendix C.

**A.      Plaintiffs' Travel Expenses Should Be Reimbursed.**

Defendants object to some of the Center and Paul, Weiss's travel expenses.

Opp'n 27; Dkt. Nos. 220-20–220-23.  These expenses were incurred for depositions and witness

preparation sessions and for the Fifth Circuit oral argument.  Defendants object to several travel

charges as having "no relationship" to the case, but (as Defendants must have known) these

correspond to when and where the depositions were taken.  Delaney Decl. II ¶¶ 9–13.  Likewise,

Defendants simply assert that other charges are "excessive," without any supporting evidence.

*See* Delaney Decl. II ¶ 15; *Baisden* v. *I'm Ready Prods., Inc.*, 793 F. Supp. 2d 970, 980 (S.D.

Tex. 2011) (holding that it is reasonable to purchase airline tickets on the same day as travel).

And Defendants' characterization of certain attorneys as "passive observers" is inaccurate.

These attorneys played active and necessary roles in preparing the witnesses, second-chairing

depositions, and/or preparation for oral argument.  Delaney Decl. II ¶¶ 10–14; *supra*, pp. 14–15.

**B.      Plaintiffs' Shipping Expenses Should Be Reimbursed.**

Defendants object to the entirety of Plaintiffs' shipping expenses on the ground

that they are purportedly unnecessary "[i]n the modern era."  Opp'n 26–27.  Plaintiffs used

FedEx or a messenger approximately two dozen times in over a six-year litigation, for example,

to ship deposition exhibits or witness preparation materials.  Such shipping expenses are

reasonable, customarily paid by clients, and routinely reimbursed in this Circuit.  *See, e.g.*, Mot.

16; *Lewallen* v. *City of Beaumont*, 2009 WL 2175637, at *17 (E.D. Tex. July 20, 2009), *aff'd*, 394

F. App'x 38 (5th Cir. 2010); *Hannon* v. *Nevitt*, 2013 WL 12290978, at *14 (N.D. Tex. Mar. 14,

2013).

**C.      Plaintiffs' Research Expenses Should Be Reimbursed.**

Defendants object to the entirety of Plaintiffs' research expenses—which are only

PACER and interlibrary loans (since Plaintiffs already wrote off all database research fees)—on

the ground that they are "overhead."  Opp'n 26–28.  Not so.  If Plaintiffs' counsel had not taken

this case, this research would not have been undertaken.  These costs are thus not "overhead."[19]

Many courts have awarded such expenses.  *See* Mot. 16; *Volvo Fin. Servs.* v. *Williamson*, 2018

WL 1096852, at *2 (S.D. Miss. Feb. 28, 2018) (awarding PACER expenses); *Auto Parts Mfg.*

*Miss. Inc.* v. *King Constr. of Houston, LLC*, 258 F. Supp. 3d 740, 756, 758–59 (N.D. Miss. 2017)

(same); *Butler* v. *Rapides Found.*, 365 F. Supp. 2d 787, 796 (W.D. La. 2005) (same).

### D.       Plaintiffs' Videographer Expense Should Be Reimbursed.

Lastly, Defendants balk at paying for a deposition videographer.  Opp'n 28–29.

Defendants assert, without evidentiary support, that video was unnecessary because these

witnesses would have appeared at a bench trial.  Mot. 17.  Even assuming that premise (which

was not certain at the time), video still could and would have been used at trial for impeachment

purposes.  Notably, Defendants did not object to the videotaping at the time.  *See, e.g.*, *Silicon*

*Knights, Inc.* v. *Epic Games, Inc.*, 917 F. Supp. 2d 503 (E.D.N.C. 2012) (citing lack of objection

to videotaping in support of granting costs).  Moreover, Defendants' argument is limited to the

narrow language of 28 U.S.C. § 1920.  *See* Opp'n 28.  Defendants ignore the broader authority to

reimburse this cost under 42 U.S.C. § 1988.  Under § 1988, it is irrelevant whether the videos

were "necessarily obtained."  Under § 1988, it is sufficient that a paying client would

customarily reimburse the lawyer for the expense.  *See* Delaney Decl. II ¶¶ 18–21.

---

[19]   In *Clark* v. *Centene Corp.*, 2015 WL 6962894, at *11 (W.D. Tex. Nov. 10, 2015) (cited Opp'n 27 n.16), plaintiffs were entitled *only* to reimbursement for taxable costs under 28 U.S.C. § 1920, *not* (as here) to reimbursement for a broader category of nontaxable expenses compensable under the Civil Rights Act, 48 U.S.C. § 1988(b).  But, even under § 1920, *Clark* is incorrect.  *See, e.g.*, *Lewallen*, 2009 WL 2175637, at *17 ("PACER charges are recoverable fees of the clerk under 28 U.S.C. § 1920(1).").

## Conclusion

For the foregoing reasons, this Court should grant Plaintiffs $1,145,146.75 of

attorney's fees and $44,699.20 in expenses and costs, for a total of $1,189,845.95.

Dated: September 20, 2018
New York, NY

Respectfully submitted,

*s/ Aaron S. Delaney*
Aaron S. Delaney*
NY Bar #4321642
Paul, Weiss, Rifkind,
  Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Ph: (212) 373-3119
Fax: (212) 492-0119
adelaney@paulweiss.com

Julie Rikelman*
NY Bar #3011426
Hillary Schneller*
NY Bar #5151154
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
Ph: (917) 637-3670
Fax: (917) 637-3666
jrikelman@reprorights.org
hschneller@reprorights.org

Robert McDuff
767 North Congress Street
Jackson, MS 39202
Ph: (601) 969-0802
Fax: (601) 969-0804
rbm@mcdufflaw.com

*Admitted *pro hac vice*

19

## Certificate of Service

I hereby certify that on September 20, 2018, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*s/ Aaron S. Delaney*
Aaron S. Delaney*
NY Bar #4321642
Paul, Weiss, Rifkind,
  Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Ph: (212) 373-3119
Fax: (212) 492-0119
adelaney@paulweiss.com
