UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JACKSON WOMEN'S HEALTH                                    PLAINTIFFS
ORGANIZATION, ET AL.

V.                                    CIVIL ACTION NO. 3:12-CV-436-DPJ-FKB

MARY CURRIER, M.D., M.P.H.,                               DEFENDANTS
ET AL.

ORDER

        Plaintiffs Jackson Women's Health Organization ("JWHO") and Dr. Willie Parker seek

an award of attorneys' fees, expenses, and costs under 42 U.S.C. § 1988(b), 28 U.S.C. § 1920,

and Federal Rule of Civil Procedure 54(d).  Mot. [217].  In all, Plaintiffs seek $1,145,146.75 in

attorneys' fees in addition to costs and expenses.  Defendants do not substantively dispute that

Plaintiffs are entitled to recover but suggest that the attorneys' fee award should be no more than

$411,047.50.   For the following reasons, the Court awards $714,159 in fees plus the reasonable

costs and expenses addressed below.

I.      Facts and Procedural History

        On June 27, 2012, Plaintiffs filed this lawsuit under 42 U.S.C. § 1983 challenging two

provisions of a 2012 Mississippi abortion law:  the admitting-privileges requirement and the ob-

gyn requirement.  Plaintiffs ultimately succeeded in having the former declared unconstitutional

and permanently enjoined, and they now seek an award of over $1.1 million in attorneys' fees,

over $30,000 in expenses, and nearly $14,000 in costs incurred in litigating the admitting-

privileges-requirement claim.[1]  The matters raised have been fully briefed—including a Sur-Reply [229] and a Sur-Sur-Reply [231].

II.     Analysis

    A.     Attorneys' Fees

Under 42 U.S.C. § 1988(b), "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  While this section grants the Court discretion whether to award fees to a prevailing party in a § 1983 case, the Fifth Circuit has noted that "the discretion afforded to district courts to deny attorney's fees to prevailing plaintiffs under § 1988 is exceedingly narrow." *Sanchez v. City of Austin*, 774 F.3d 873, 878 (5th Cir. 2014) (quoting *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985)).

Defendants concede that Plaintiffs are the prevailing parties with respect to the admitting-privileges requirement.  And they do not contend that "special circumstances" render a fee award unjust.  *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  Instead, they dispute the reasonableness of the fees sought.

"The linchpin of the reasonable fee is the lodestar calculation, a product of the hours reasonably expended by the law firms and the reasonable hourly rate for their services." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011).  Here, the lodestar calculations Plaintiffs seek are set forth in the following table:

| Timekeeper | Plaintiffs' Proposed Hourly Rate | Hours Billed by Attorney | Plaintiffs' Lodestar |
|---|---|---|---|
|  |  |  |  |

---

[1] In their original motion, Plaintiffs sought $1,226,481.50 in fees, $30,828.06 in expenses, and $13,941.69 in costs.  Mot. [217].  In their reply, Plaintiffs reduced their requests.  Pls.' Reply [223].  The Court will assess the reasonableness of the request set forth in Plaintiffs' reply.

| Julie Rikelman | $600 | 319.7 | $191,820 |
| Michelle Movahed | $475 | 491.75 | $233,581.25 |
| Autumn Katz | $525 | 100.25 | $52,631.25 |
| Jenny Gerry | $250 | 75.25 | $18,812.50 |
| Lara Rabiee | $400 | 147.5 | $59,000 |
| Tiseme Zegeye | $400 | 181 | $72,400 |
| Hillary Schneller | $400 | 48.7 | $19,480 |
| Rob McDuff | $450 | 93.1 | $41,895 |
| Allan Arffa | $675 | 7.4 | $4,995 |
| Aaron Delaney | $525 | 475.55 | $249,663.75 |
| Corey Callahan | $400 | 76.82 | $7,400 |
| Paula Viola | $400 | 425.35 | $170,140 |
| | | | |
| **Total** | | **2442.37** | **$1,145,146.75** |

The Court will address each component of the lodestar calculation separately, starting with the hourly rate.

      1.      Reasonable Hourly Rate

The general rule is that "'reasonable' hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'" *McClain*, 649 F.3d at 381 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). And Plaintiffs bear the burden of "produc[ing] satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* (quoting *Blum*, 465 U.S. at 896 n.11).

Usually, "the 'relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits'"—here, the Northern Division of the Southern District of Mississippi—and the reasonable hourly rate for that community "is established through affidavits of other attorneys practicing there." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quoting *Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998). Courts also look to other court decisions regarding the prevailing

rate.  *See, e.g.*, *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 660 (5th Cir. 1996)

(affirming prevailing rate arrived at by district court using "the hourly rate on awards by other

judges in the [division,] previous awards in the . . . case, and the published billing rates of

outside counsel").  There is no dispute that the prevailing local rate must apply to Plaintiffs' local

counsel Robert McDuff.  Accordingly, the Court will consider his rate before turning to the out-

of-district attorneys.

a.    Robert McDuff

Plaintiffs assert that a rate of $450 an hour for McDuff's time "is in line with the

prevailing rates in Jackson for similar services by lawyers of reasonably comparable skill,

experience, and reputation."  Pls.' Mem. [218] at 14.  They support that statement first with

McDuff's own declaration, in which he states that he has "had hourly rate clients who paid $350

per hour and others who have paid between $350 and $500."  McDuff Decl. [217-10] ¶ 7.

Plaintiffs supplement McDuff's declaration with one from attorney Cliff Johnson, who

opines that "the $450/hour rate sought by Mr. McDuff is consistent with the rates charged to fee-

paying clients by lawyers based in the Southern District of Mississippi of reasonably comparable

skill, reputation, and experience during the relevant time period."  Johnson Decl. [217-17] ¶ 13.

Finally, Plaintiffs note that in *Perez v. Bruister*, the Court approved an *undisputed* hourly rate of

$375 for Jackson attorney Louis Watson, who graduated law school eleven years after McDuff.

Pls.' Mem. [218] at 20 (citing No. 3:13-CV-1001-DPJ-FKB, 2015 WL 5712883, at *6 (S.D.

Miss. Sept. 29, 2015)).

Defendants counter that a $350 hourly rate is more appropriate for McDuff's time.  They

begin by citing an April 30, 2015 affidavit that local attorney Lawson Hester filed in another

case.  There, Hester testified,

4

> Throughout the course of my practice, I have never known any attorney in Mississippi to receive compensation in excess of $265/hr. for handling 42 U.S.C. § 1983 claims. In my experience, typical rates across the state for these types of claims fall in the range of $150–$250/hour, depending upon the experience of the counsel, the complexities of the case and the past billing relationships of the party and counsel.

Hester Aff. [222-17] ¶ 7. Defendants also cite several § 1983 cases from this district approving hourly rates ranging from $150 to $375 per hour. Defs.' Mem. [222] at 7 (collecting cases). Finally, Defendants offer a survey from the Mississippi Bar indicating that in 2016, just 1.5% of Mississippi attorneys billed their clients $400 per hour or more. Survey [222-18] at 5.[2]

The Court's own research, coupled with the other record evidence, indicates that a $375 hourly rate is appropriate for McDuff's work as local counsel. As Judge Reeves observed in *Depriest v. Walnut Grove Correctional Authority*, "Prevailing market rates for [major civil-rights] work in Jackson vary widely." No. 3:10-CV-663-CWR-FKB, 2017 WL 4228751, at *7 (S.D. Miss. Sept. 22, 2017) (collecting cases). In that case, McDuff successfully prosecuted claims of systemic Eighth Amendment violations at the Walnut Grove Correctional Facility and sought an hourly rate of just $219. Judge Reeves approved that request but suggested that McDuff undervalued his services after offering an "affidavit stating that hourly rates for similar attorney work in Jackson are between $300 and $450." *Id.*

McDuff's record evidence in *Depriest*—as well as his declaration in this case—fully support a $375 hourly rate for his work as local counsel. And that rate finds further support in two other cases from this district. First, in *Anderson v. City of McComb*, Judge Tom Lee approved a $375 hourly rate for prominent Mississippi attorney Dennis Sweet. No. 5:13-CV-263-TSL-MTP, 2016 WL 4261777, at *4 (S.D. Miss. Apr. 4, 2106). Second, in *Perez*—an

---

[2] The survey was based on voluntary responses from bar members. Still, it does provide some weight.

ERISA case that was far more complicated and time-consuming than this one—the undersigned approved that same rate for attorney Louis Watson. *Perez*, 2015 WL 5712883, at *6–7. All parties in *Perez* deemed the fee reasonable for Watson's work as local counsel. *Id.* at *2. Here, Plaintiffs say McDuff should be paid more than Watson because he has been practicing longer. But Watson is no novice; he has been practicing for nearly 28 years and has built a sizeable practice. His rate as local counsel in *Perez* is a good benchmark. In view of the foregoing, the Court finds that an hourly rate of $375 represents a reasonable, prevailing-market rate for McDuff's work assisting as local counsel in this case.

b. Out-of-District Counsel

Plaintiffs' out-of-district attorneys all practice in the Southern District of New York, and they seek the prevailing hourly rates for that venue. For the seven attorneys with the Center for Reproductive Rights ("CRR"), the requested rates range from $250 to $600 per hour. Plaintiffs also employed four attorneys from the New York office of the Paul Weiss firm, and they seek hourly rates between $400 and $675 for their services.

Generally, forum rates apply. *McClain*, 649 F.3d at 382. But the Fifth Circuit created an exception to the local-community rule for cases "where . . . abundant and uncontradicted evidence prove[s] the necessity of . . . turning to out-of-district counsel." *Id.* In *McClain*, the court found that the plaintiffs met that burden because the record was "replete with affidavits from a variety of expert employment lawyers who swore that no Texas attorneys were willing and able to assist in such a large case that might drag on for years without any guarantee of financial remuneration." *Id.* at 383.

Plaintiffs say that they too meet this burden based largely on declarations from five Mississippi attorneys: McDuff, Cliff Johnson, Mark Wann, Beth Orlansky, and Paloma Wu.[3]

In relevant part, McDuff's declaration states:

I am aware of no lawyer or law firm in Mississippi who would have been willing and able to take this case as lead counsel and spend the time and resources necessary to litigate it effectively. Abortion is generally unpopular in Mississippi. Many Mississippi lawyers are opposed to abortion. Even for those who are not, many would be concerned about the impact such a case would have on their practice because it would be unpopular with some of their existing and potential clients and would affect their reputations in ways they believe would be adverse to their business. In addition, the economics of such a case would make it extremely difficult for a solo or small-firm lawyer to take the case and spend the necessary time and resources on it. Even for large law firms, the economics of a case such as this, as well as [the] unpopularity of abortion among many Mississippians, including many of their clients, would deter them from taking it on. While there are a small number of nonprofit public interest law offices in Mississippi, none of their lawyers at the time had significant experience in abortion rights litigation. The only one that I believe might have taken this case in light of the cost and time commitment would have been the ACLU of Mississippi, which invariably brings in lawyers from its national office to provide the necessary experience and resources for litigation such as this. Had the ACLU taken this case, lawyers from its national ACLU office who specialize in abortion rights litigation would have taken the lead and done the vast majority of the work and the national office would have funded the litigation.

Very few lawyers in Mississippi have experience litigation abortion rights cases. I believe I have more experience in this area than any other lawyer in Mississippi. But I could not have afforded the time or the financial resources necessary to take this case either by myself or in combination with any other willing Mississippi lawyers. This case could not have been litigated properly unless the Plaintiffs had also been represented by out-of-state counsel with the expertise, time, and resources to do so.

McDuff Decl. [217-10] ¶¶ 12–13. Johnson's declaration echoes McDuff's perspective:

While there are Mississippi attorneys—such as Rob McDuff and myself—who are willing to assist as local counsel in reproductive rights cases, I am not aware of any Mississippi lawyers with the combination of the necessary skills, experience, time, and resources who would have been willing and able to take on

---

[3] The declarations of Wann, Orlansky, and Wu were submitted with Plaintiffs' reply, and ordinarily the Court does not consider new evidence submitted with a reply. *See Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008). But in this case, each side submitted an additional brief beyond Plaintiffs' reply. The Court will consider the new evidence.

a complex, multi-year abortion rights case without substantial assistance from
out-of-state counsel.

Johnson Decl. [217-17] ¶ 7.  As for Wann, Orlansky, and Wu, they are the only other in-state

attorneys Defendants identified by name as being equipped to assist McDuff in this case, yet all

three contradicted that argument.[4]

Defendants offer no record evidence to rebut these declarations.  Instead, they argue that

Plaintiffs have not "demonstrate[d] that there were no local attorneys willing and able to serve as

co-counsel with Mr. McDuff."  Defs.' Sur-Reply [229] at 3.  But *McClain* would not require an

affidavit from every practicing attorney in Mississippi.  Plaintiffs have offered sworn evidence

from the attorneys and organizations Defendants identify as being best equipped to handle this

litigation.  As such, the declarants are in the best position to know whether it was necessary to

look outside the district.   On this record, Plaintiffs have produced "abundant and uncontradicted

---

[4] *See* Wann Decl. [223-9] ¶ 3 ("Had I been asked by Mr. McDuff to join him in the
representation of the plaintiffs in th[e] case without the assistance of the [New York lawyers], it
would have been difficult for me to spend 1,600 to 2,600 hours on th[e] case or anywhere close
to it without any assurance of compensation.  Without such assurance, I likely would have had
no more time to spend on it than the approximately 100 hours that Mr. McDuff spent."); *id.* ¶ 4
("From my knowledge of the Bar in Mississippi, I believe there are only a handful of attorneys
who are willing to [handle an abortion-rights case.]  I am not aware of any Mississippi attorneys
who would be willing to do so and who would have had the expertise, time or resources to
devote 1,700 to 2,700 hours to the admitting privileges case, particularly since there was no
guarantee of compensation or reimbursement of expenses in the case."); Orlansky Decl. [223-10]
¶ 3 ("Had [the Mississippi Center for Justice] been asked in 2012 to represent JWHO in the
challenge to the legislature's admitting privileges law, we could only have considered taking the
case as local counsel to someone with the time, expertise, and resources to handle the case.");
Wu Decl. [223-11] ¶ 5 ("Had the ACLU-MS been asked to represent the plaintiffs in a challenge
to the Mississippi admitting privileges law, we could have done so only if the Reproductive
Freedom Project from the ACLU's national office had been willing and able co-counsel."); *id.* ¶
6 ("If asked, I would not have sought to represent plaintiffs in this case without partnering with
reproductive rights subject matter experts and with a law firm, which would have logged the
majority of litigation hours.").

evidence prove[s] the necessity of . . . turning to out-of-district counsel." *McClain*, 649 F.3d at 382.

That does not mean, however, that the New York rates are necessarily appropriate for the lodestar calculation. As noted in *McClain*, "even courts that concluded out-of-district counsel were necessary often affirmed reduced fees for those attorneys." *Id.* So while the "'home' rates should be considered as a *starting point* for calculating the lodestar amount . . . the district court retains discretion to adjust the lodestar." *Id.* (emphasis added).

Looking to the Southern District of New York, courts in that jurisdiction have awarded a wide variety of rates for civil-rights work. For example, Plaintiffs say the Paul Weiss attorneys should receive rates above those approved by the court in *Cruz v. Zucker*, No. 14-CV-4456 (JSR), 2017 WL 1093285, at *3 (S.D.N.Y. Mar. 10, 2017). In *Cruz*, the court awarded a similarly large firm hourly rates of $675 for partners, $525 for counsel, and $375 for associates. But in that case, the court noted that the billing attorneys brought "not only public interest experience, but also their expertise as class action litigators." *Id.* Here, the Paul Weiss *firm* may have considerable experience in this type litigation, but the attorneys who actually billed the vast majority of the time did not. As discussed below, the primary billing attorney apparently had no subject-matter experience, and the only active attorney who did was admitted to the bar less than two years before working on this case.

Moreover, it appears that the Paul Weiss attorneys were mostly young lawyers providing leg work for the CRR. According to Ms. Rikelman, she oversaw "all aspects of this case, including developing Plaintiffs' legal and factual arguments and overall strategy." Rikelman Decl. [217-1] ¶ 3. She also took

> the lead on the case once it reached the appellate stage, including arguing on
> behalf of Plaintiffs before the U.S. Court of Appeals for the Fifth Circuit in

defending the Court's preliminary injunction, drafting the opposition to
Defendants' Petition for Rehearing En Banc before the Fifth Circuit, and drafting
an opposition to Defendants' petition for certiorari to the U.S. Supreme Court.

*Id.* All of this suggests that some of the Paul Weiss attorneys gained experience by working on

this case; they did not bring it with them.

The Court also notes that other district court cases from New York have approved rates

lower than those in *Cruz*. For example, in *Jean-Louis v. City of New York*, the court observed

that "[r]ates found reasonable by courts in [the Southern District of New York] for *experienced*

civil rights attorneys appear to cluster in the $350–450 per hour range." No. 16-CV-5275, 2018

WL 5292125, at *3 (S.D.N.Y. Oct. 25, 2018) (emphasis added) (quoting *Salama v. City of N.Y.*,

No. 13-CV-9006, 2015 WL 4111873, at *2 (S.D.N.Y. July 8, 2015)). The present case is more

impactful than *Jean-Louis*, but most of the timekeepers here cannot be described as

"experienced." *Id.*[5]

With that, the Court will begin with the two most experienced attorneys, Julie Rikelman

and Alan Arffa. There can be no real dispute that Rikelman is properly characterized as an

"experienced civil rights attorney." *Id.*; *see* Rikelman Decl. [217-1] ¶¶ 7–10. She took the lead

in this case and provided substantial litigation and subject-matter experience. That experience

_____

[5] Plaintiffs submitted a declaration from E. Joshua Rosenkranz, a New York attorney, who
opines that the prevailing market rates for the New York attorneys are higher than the rates at
which the Paul Weiss attorneys seek reimbursement. Rosenkranz Decl. [217-18] ¶ 16. But it
does not appear that Mr. Rosenkranz knows the young lawyers who actually billed time in this
case. *See id.* ¶ 8 (stating that he has "personal knowledge of the experience and skill of senior
litigation attorneys at the firm"). He also provides insight into the rates his firm charges clients,
but he does not explain the type of clients or the nature of the work. *See id.* ¶¶ 10–13. Finally,
he opines about the rates charged by the New York attorneys in this case and says they are less
than rates in "comparable" circumstances. But again, the New York rates are just the starting
point. *See McClain*, 649 F.3d at 382. And, as discussed, other cases from United States District
Court for the Southern District of New York indicate that the prevailing rates are lower. So,
while the Court has considered the declaration, it is not dispositive.

prompted another district court to award her $550 per hour in similar litigation. *See Stuart v. Walker-McGill*, No. 1:11-CV-804, 2016 WL 320154, at *19 (M.D.N.C. Jan. 25, 2016). The Court agrees that $550 is a reasonable hourly rate for Rikelman.[6]

Arffa, the co-chair of Paul Weiss's litigation department, has extensive litigation and relevant civil-rights experience after 35 years of practice. Given his experience but limited involvement in the case, he too should be paid $550.

From there, the experience levels drop precipitously. Michelle Movahed had relevant abortion-litigation experience, but only five years of it. Given her experience and the challenges of the case, the Court concludes that an hourly rate of $350 is reasonable for Movahed's time. *See Alicea v. City of N.Y.*, 272 F. Supp. 3d 603, 611 (S.D.N.Y. 2017) (finding hourly rate of $300 appropriate for attorney with "approximately six years of experience litigating principally civil rights cases" in less significant litigation). Plaintiffs seek a higher hourly rate for Autumn Katz than Movahed, but they do not detail her experience other than to say she graduated law school a year ahead of Movahed. Rikelman Decl. [217-1] ¶¶ 15, 17. On this record, the Court sees little difference between the two and finds $350 an appropriate hourly rate for Katz.

Aaron Delaney apparently led the Paul Weiss effort—with some oversight from Arffa— and was the firm's heaviest biller. Delaney graduated in 2004, but he is not a partner, and his declaration reflects no abortion-litigation experience. *See* Delaney Decl. [217-13] ¶ 5. The Court equates him with Movahed who had fewer years in the practice but more relevant experience. Delaney will also receive $350 per hour for his time. While Movahed, Katz, and

---

[6] Defendants note that Rikelman sought only $300 for similar work in Arkansas, but it appears that the district court based the rate decision on "the ordinary rate for similar work in the community where the case has been litigated." *Edwards v. Beck*, No. 4:13-CV-224-SWW, 2016 WL 6915306, at *2 (E.D. Ark. Mar. 11, 2016).

Delaney seek higher rates than these, the rates awarded are within the range for "experienced civil rights attorneys" in New York. *Jean-Louis*, No. 16-CV-5275, 2018 WL 5292125, at *3; *see also Lewis v. Am. Sugar Ref., Inc.*, No. 14-CV-02302 (CRK), 2019 WL 116420, at *4 (S.D.N.Y. Jan. 2, 2019) (holding in less significant civil-rights case that "[c]ourts in this district have approved hourly rates of $250 to $600 for civil rights attorneys with over ten years of experience").

The remaining out-of-district attorneys may all be characterized as junior associates—they all began their litigation careers shortly before working on this case. *See* Rikelman Decl. [217-1] ¶¶ 19–21; Delany Decl. [217-13] ¶¶ 7–8. Those at CRR had worked in similar cases during their brief careers. At Paul Weiss, Paula Viola had the most relevant experience, but she had been a member of the bar for less than two years when she started this case. Delaney Decl. [217-13] ¶¶ 8, 11. Her colleague Corey Callahan had little litigation experience and apparently no subject-matter experience. *Id.* ¶ 7. Given their lack of experience and the fact that Plaintiffs employed 13 billing lawyers to work on this case, the Court cannot justify the $400 per hour that Plaintiffs claim is the going rate for junior litigators in New York. Accordingly, Lara Rabiee, Tiseme Zegeye, Hillary Schneller, Jenny Gerry, Corey Callahan, and Paula Viola will receive $225 per hour. Again, the Court recognizes that this case is more significant than typical civil-rights cases, but the $225 is slightly higher than the bottom rate for such cases in the Southern District of New York. *See Lewis*, 2019 WL 116420, at *4 ("Courts in this district have approved hourly rates of . . . $200 to $350 for associates.").

2.     Hours Reasonably Expended

Regarding the hours reasonably expended, "[c]harges for excessive, duplicative, or inadequately documented work must be excluded." *McClain*, 649 F.3d at 381. Additionally, the

Court must consider whether the attorney "exercised billing judgment," which is shown by the attorney writing off hours that are "unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). But "the Court should not act as [a] 'green-eyeshade accountant[]', as '[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.'" *Idom v. Natchez-Adams Sch. Dist.*, No. 5:14-CV-38-DCB-MTP, 2016 WL 320954, at *3 (S.D. Miss. Jan. 25, 2016) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

The party seeking fees must provide proof "sufficient for the court to verify that the applicant has met its burden of establishing an entitlement to a specific award." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010). Certain billing practices undermine that proof. For example, "[t]he ability to assess the reasonableness of a fee request is greatly undermined by the practice of billing multiple discrete tasks under a single time designation—so-called 'block-billing.'" *DeLeon v. Abbott*, 687 F. App'x 340, 346 n.4 (5th Cir. 2017). The same is true for vague time entries. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

Insufficient record keeping is not a *per se* bar to recovery. *Gagnon*, 607 F.3d at 1044. But litigants "take their chances" when the record keeping makes it difficult for the Court to conduct its review. *DeLeon*, 687 F. App'x at 346 n.4 (Elrod, J., concurring in part and dissenting in part) ("[L]itigants take their chances in submitting fee requests containing block-billed entries and will have no cause to complain if a district court reduces the amount requested on this basis."); *Kellstrom*, 50 F.3d at 327 ("Litigants take their chances when submitting [vague] fee applications, as they provide little information from which to determine the 'reasonableness' of

the hours expended on tasks vaguely referred to as 'pleadings,' 'documents,' or 'correspondence' without stating what was done with greater precision.").

"To compensate for block-billing, courts most often reduce the block-billed entries by a specific percentage." *Brown v. ASEÀ Brown Boveria, Inc.*, No. 3:14-CV-37-CWR-LRA, 2018 WL 283844, at *4 (S.D. Miss. Jan. 3, 2018) (reducing time for block entries by 30%). As Judge Reeves noted in *Brown*, it is not uncommon for courts to reduce block entries by 10 to 30 percent. *Id.* (citing *Bramlett v. Med. Protective Co.*, No. 3:09-CV-1596-D, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010) (collecting cases)).

Here, Defendants object to large swaths of the 2717.95 hours originally billed by Plaintiffs' counsel. For example, they object to 797.40 hours as impermissibly block-billed, 721.25 hours as vague, 150.54 hours as duplicative, and 228.15 hours as representing clerical or administrative tasks. They also object to the reasonableness of certain tasks, such as the extent of discovery undertaken in the latter stages of the case. But many of the objected-to hours involve more than one objection and have therefore been double- or triple-counted, inflating the overall number of objected-to hours.

Looking at the invoices, some timekeepers did a better job than others recording their time. Likewise, it is easier to tell as to some whether their time was reasonable in the context of the work they performed. For example, Alan Arffa's time entries were generally sufficient given his limited role, and his over-all time reviewing the work of junior attorneys was reasonable. No reduction is appropriate. So too, there is no adjustment for Corey Callahan because Plaintiffs further reduced the invoice after Defendants objected.

But to varying degrees, the other attorneys all used billing methods that make it difficult to evaluate their invoices. For example, Rikelman offered the following block-billed entry for six hours on June 25, 2012:

> Review and edit initial pleadings, including complaint, motion for TRO and memo in support of motion for TRO; confer with M. Movahed re: same; t/c with Dr. Parker and A. Katz re: Parker declaration.

Rikelman Log [217-2] at 3. And almost all of the invoices included some vague descriptions of the work. *See, e.g.*, Movahed Log [217-3] at 3 (billing two hours for "review[ing] declarations"); *see also Kellstrom*, 50 F.3d at 327 (noting that entries are vague when they list items like "'correspondence' without stating what was done with greater precision.").

Such invoices make it impossible for the Court to tell how much time the attorney spent on each task, what exactly was done, and whether the work was reasonable or duplicative. And these issues compound given the number of billing attorneys working on the same issues. The Court's general impression is that the case did not require 13 lawyers—plus other attorneys whose time was not billed.

That said, not all of the objected-to entries are problematic. And despite Defendants' arguments, the out-of-district attorneys did exercise some billing judgment. Though much of what they excluded would not have been compensable anyway, they did forego some fees on successful claims and reduced the bills a bit more after Defendants' criticism. Only a slight reduction is appropriate on this basis unless indicated otherwise. Finally, Defendants' objections based on clerical work are not persuasive as to the more senior litigators but have some merit as to the younger ones.

Based on all that, the Court will generally examine the entries for each billing attorney and then determine a percentage reduction to apply to the total hours claimed. The reduction will consider—based on the full record—the extent to which the timekeepers employed

discouraged billing techniques and the amount by which the truly objectionable entries should be reduced. It will likewise address whether the work was reasonably incurred or the result of overstaffing and duplication.

Starting again with McDuff, he reduced his time by only 3.5 hours, believing it was all otherwise reasonable. McDuff Decl. [217-10] ¶¶ 4, 6. He therefore could have exercised more billing judgment. As for his entries, the smaller ones are generally acceptable, but he did utilize block billing at times. Finally, as local counsel, his input and attendance were necessary, and the Court has enough information to assess the overall reasonableness of his time. His claimed hours will be reduced by 5%.

Turning to Rikelman, she employed block billing. Some entries were worse than others. But given her role as lead counsel, the scope of her representation, and the overall record evidence, the Court knows enough about what she did to say that the total hours she claims were generally reasonable and should be reduced by only 5%.

The biggest objection to Movahed is her use of block billing. Defendants identify 166 of her claimed 491.75 hours as having been block billed. Defs.' Chart [222-16] at 3. In the most egregious example, Movahed block billed 13 hours for 14 separate tasks. *See* Movahead Log [217-3] at 2. Most of Defendants' objections are accurate, though many of the objected-to entries are for small blocks of time. Those blocks that are objectionable should be reduced at the higher end of what courts usually assess. *See Brown*, 2018 WL 283844, at *4 (reducing time for block entries by 30%). Defendants' other objections to her time are less compelling, though there are some vague time entries. Accordingly, the Court will reduce her claimed time by 12%.

Delaney also utilized block billing. According to Defendants, he did so as to 259.7 of the 475.55 hours he claims. Defs.' Chart [222-1] at 11. They also say his entries were vague and

duplicative.  *Id.*  Looking at his bills, the Court agrees that Delaney's invoice should be reduced

somewhat because he block billed time, provided some vague entries, and performed some

duplicative work.  But his use of block billing was not as bad as Defendants suggest.  For

example, some of the entries were so small that the use of block billing did not interfere with the

Court's review.  Finally, Defendants complain about the amount of discovery for which Delaney

billed.  While the Court understands the argument, both sides continued to conduct discovery, so

no significant reduction is warranted on that issue.  In all, the Court concludes that Delaney's

time should be cut by 10%.

Katz billed 100.25 hours, but Defendants say it should have been 65.75 given her record-

keeping problems and the extent to which she engaged in work not related to the case.  As for the

records, they were not perfect, but they were generally acceptable.  Defendants' primary

complaint seems to be that Katz "billed hours devoted to drafting a petition for rehearing en banc

'in case the 5th Circuit loss.'"  Defs.' Mem. [222] at 23 (citing Katz Obj. [222-4] at 2).  Plaintiffs

explain that this work was necessary because the Fifth Circuit had reversed two district court

orders in Texas resulting in the immediate implementation of the disputed laws in that state.  *See*

*Whole Women's Health v. Lakey*, 769 F.3d 285 (5th Cir.), *vacated*, 135 S. Ct. 399 (2014);

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406 (5th Cir.

2013).  They have a point, and the Court will not make a significant reduction on this basis.  In

all, there were some vague entries, excessiveness, and duplication, justifying a reduction of 5%.

The five remaining attorneys are harder to assess.  They were all junior attorneys when

they worked on this case, and most were in their first year or two of practice.  It appears that they

provided varying degrees of behind-the-scenes support.  Some engaged in block billing, others

did not.  Some of what they billed may accurately be viewed as clerical, though it is again hard

to tell because most of them recorded at least some vague entries. Finally, based on the record as a whole, it remains difficult to tell the extent to which their work was necessary or duplicative of others. Employing 13 lawyers on a case that largely turned on legal issues seems excessive, and to some extent it appears that the litigation was a learning experience for these young lawyers. That is not to say they added no value, but the Court concludes that their claimed time should be reduced by 20%.[7]

The Court is therefore left with the following lodestar calculation:[8]

| Timekeeper | Rate | Hours Claimed | Hours Approved | Fee |
|---|---|---|---|---|
| Julie Rikelman | $550 | 319.7 | 303.715 | $167,043.25 |
| Michelle Movahed | $350 | 491.75 | 432.74 | $151,459 |
| Autumn Katz | $350 | 100.25 | 95.2375 | $33,333.125 |
| Jenny Gerry | $225 | 75.25 | 60.2 | $13,545 |
| Lara Rabiee | $225 | 147.5 | 118 | $26,550 |
| Tiseme Zegeye | $225 | 181 | 144.8 | $32,580 |
| Hillary Schneller | $225 | 48.7 | 38.96 | $8,766 |
| Rob McDuff | $375 | 93.1 | 88.445 | $33,166.875 |
| Allan Arffa | $550 | 7.4 | 7.4 | $4,070 |
| Aaron Delaney | $350 | 475.55 | 427.995 | $149,798.25 |
| Corey Callahan | $225 | 76.82 | 76.82 | $17,284.50 |
| Paula Viola | $225 | 425.35 | 340.28 | $76,563 |
| **Total** | | | | **$714,159** |

[7] It is worth noting that the undersigned and one law clerk conducted extensive research on the very issues for which the attorneys billed time. That research was wide-ranging and was not limited to the cases and issues the parties addressed in their briefs. The Court likewise drafted orders addressing the same legal disputes argued in the parties' memoranda. That experience gives the Court yet another reason to conclude that the requested time is excessive.

[8] To the extent a timekeeper's request was adjusted in Plaintiffs' reply, this table incorporates the changes reflected in the reply.

3.    Application of the *Johnson* Factors

After the lodestar is determined, the Court may adjust the fee award upward or downward applying the 12 factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).[9]  But "the lodestar method yields a fee that is presumptively sufficient." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).  And "many of the *Johnson* 'factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'"  *Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 1:07-CV-568-HSO-RHW, 2011 WL 6699447, at *4 (S.D. Miss. Dec. 21, 2011) (quoting *Hensley*, 461 U.S. at 434 n.9).  In this case, Plaintiffs do not seek a *Johnson* enhancement of the award, Defendants do not seek a *Johnson* reduction, and the Court's lodestar adequately accounts for the concerns raised by the *Johnson* factors.  The Court's lodestar yields an appropriate fee.

B.    Expenses

"All reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone, are plainly recoverable in section 1988 fee awards because they are part of the costs normally charged to a fee-paying client.  Whether these expenses are reasonable is committed to the sound discretion of the trial judge." *Associated Builders & Contractors of La., Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990) (citations

---

[9] The *Johnson* factors are:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  488 F.2d at 717–19.

omitted). "[E]xpenses that 'are extravagant or unnecessary' must be disallowed." *DeLeon*, 687 F. App'x at 342 (quoting *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 553 (5th Cir. 1987)).

At the outset, it is not entirely clear how to characterize some of the items for which Plaintiffs seek reimbursement. The parties agree as to the expenses sought by McDuff ($60.08) and Paul Weiss ($22,263.49). The CRR expenses are less clear. While Plaintiffs say CRR seeks $8,504.49 in expenses and $3,358.07 in costs, their documentation does not readily distinguish between § 1988 expenses and taxable costs. *See* Pls.' Mem. [218] at App'x B; CRR Expenses [217-9] (breaking down $11,862.56 sought into travel, meals, and lodging ($7,599.84); court and deposition fees ($2,999.50); telecommunications ($138.80); and document copying and shipping ($1,124.42); no combination of two or three of those categories adds up to $8,504.49). Defendants seem to assume that the entire amount CRR seeks falls into the request for expenses rather than costs, and Plaintiffs do not clarify in their Reply. Defs.' Mem. [222] at 26. Like Defendants, the Court considers CRR's request as one for expenses rather than costs. The Court will address the expense requests of each set of lawyers in turn.

1. McDuff

Starting with McDuff's expenses, he seeks $60.08 in PACER, FedEx, and postage fees. Defendants object to his request as providing "insufficient description or detail to determine the need or reasonableness of any of these expenses." Defs.' Mem. [222] at 26. But the FedEx and postage fees represent costs normally charged to a fee-paying client, and given the de minimis nature of the request, the Court finds those expenses reasonable. *See Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001) (finding postage and photocopying costs awardable as expenses).

As to the $13.80 in PACER fees, there is some debate whether PACER fees are recoverable *as costs* under Rule 54(d) and 28 U.S.C. § 1920. *See Zastrow v. Hous. Auto M. Imports Greenway, Ltd.*, 695 F. App'x 774, 780 (5th Cir. 2017) (citing *Giner v. Estate of Higgins*, No. 11-CV-126, 2012 WL 2397440, at *5 (W.D. Tex. June 22, 2012) (collecting cases)). As a component of expenses, at least one court in the Fifth Circuit has found that PACER fees are not "properly included in an award of attorney's fees, as [it is an] overhead expense[] typical to any law practice." *Clark v. Centene Corp.*, No. 12-CA-174, 2015 WL 6962894, at *11 (W.D. Tex. Nov. 10, 2015). In any event, McDuff's declaration offers no suggestion that his office ordinarily passes those type of fees on to fee-paying clients. So McDuff's request will be denied as to the PACER charges but granted as to the $46.28 in FedEx and postage fees.

2.     Paul Weiss

Turning to Paul Weiss's expenses, of the $22,263.49 claimed, Defendants object to $19,139.22, representing "$13,185.30 in unreasonable and excessive travel expenses," "all $999.77 in . . . shipping expenses," and "all $4,954.15 in . . . research expenses." Defs.' Mem. [222] at 27.

Starting with the travel expenses, Paul Weiss seeks reimbursement totaling $16,309.57, and Defendants say $13,185.30 of those expenses should be disallowed. In reply, Paul Weiss conceded one line item for $63.23, leaving the disputed amount at $13,122.07. Delaney Reply Decl. [223-2] ¶ 16. Plaintiffs provide evidence that travel expenses "are part of the costs that Paul[] Weiss would charge a fee-paying client." Delaney Decl. [217-13] ¶ 24; *see* Delaney Reply Decl. [223-2] ¶¶ 10–15; *see also West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 396 (5th Cir. 2003) ("[W]e have affirmed awards of out-of-pocket travel expenses as components of

attorney's fee recoveries under § 1988."). That said, Paul Weiss has submitted the travel expenses of two attorneys for whom no billed time was submitted: Nora Ahmed and Alexis Cohen. Plaintiffs have not demonstrated that Paul Weiss would have billed a fee-paying client for their travel expenses, so the Court will exclude them. Paul Weiss is awarded $12,676.31 in travel-related expenses.

As to the shipping expenses, like the FedEx and postage fees sought by McDuff, those are properly included in an expense award. *See Mota*, 261 F.3d at 529. Paul Weiss withdrew $7.32 of its request in Reply, so it is awarded shipping expenses of $992.45. Delaney Reply Decl. [223-2] ¶ 17.

Finally, Paul Weiss seeks reimbursement for $3,706.61 in interlibrary loans and $1,247.54 in PACER fees. Paul Weiss Expenses [217-15] at 94–149. Unlike McDuff, Paul Weiss has submitted evidence that these fees "are part of the costs that [the firm] would charge a fee-paying client." Delaney Decl. [217-13] ¶ 24. Given this evidence, the Court finds the expense is reimbursable under § 1988.

        3.      CRR

Defendants object to $7,764.14 of CRR's claimed expenses, asserting that "the expense documentation is inadequate to show that all of these expenses are legitimate." Defs.' Mem. [222] at 26–27. Defendants' objection is entirely unspecific, and in their reply, Plaintiffs reorganized their supporting documentation to more easily correspond to the entries on their expense ledger. Defendants did not address CRR's expenses further in their sur-reply. Absent more specific argument explaining why these expenses should not be included in Plaintiffs' award, the Court grants CRR's expense request of $11,862.56.

C. Costs

Having considered CRR's request for expenses and costs solely under § 1988, the only remaining issue is Paul Weiss's request for taxable costs in the amount of $10,583.62. By statute,

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

The only item of Paul Weiss's costs request to which Defendants object is a $2,961.40 charge for the videographer that shot the videotaped depositions of four witnesses. Defendants say the videographer expenses were not "necessarily" incurred:

> Because the trial in this case would have been a bench trial, there would have been no need to play these videos at trial—a transcript would have sufficed. Further, all of the deponents were [state] employees who work at the . . . state office building in Jackson, and therefore were within the Court's subpoena power to be compelled to testify live at trial.

Defs.' Mem. [222] at 29. Plaintiffs disagree, saying that it "was not certain at the time" that the witnesses would have appeared at a bench trial and, in any event, "video still could and would have been used at trial for impeachment purposes." Pls.' Reply [223] at 24. Plaintiffs also note that "Defendants did not object to the videotaping at the time," and that the Court could order

reimbursement of this cost under § 1988 because "a paying client would normally reimburse the lawyer for the expense." *Id.*; *see* Delaney Reply Decl. [223-2] ¶ 20.

The Court finds that this cost is reimbursable. While the case would have been tried without a jury, video-taped depositions are often used in bench trials and provide courts more information from which to evaluate credibility. On this record, the Court will include the disputed $2,961.40 in its expense award.

III.    Conclusion

In a case involving 13 timekeepers performing overlapping work that drew overlapping objections as to recordkeeping and reasonableness, there was no way to review each individual time entry. The Court did its best to review each timekeeper's records and each objection to determine a reasonable fee for the work done. It also considered all arguments; those not addressed would not have changed the outcome. For the foregoing reasons, Plaintiffs' Motion for Attorneys' Fees, Expenses, and Costs [217] is granted in part. The Court awards attorneys' fees in the amount of $714,159, § 1988 expenses in the amount of $33,493.15, and taxable costs of $7,622.22, for a total award of $755,274.37.

**SO ORDERED AND ADJUDGED** this the 1st day of February, 2019.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE